37  259
38  600

PHILIP LIKES ET AL., APPELLEES, v. HOWARD M. KEL-
LOGG, ADMINISTRATOR OF THE ESTATE OF DAVID
STONE, DECEASED, ET AL., APPELLANTS.

FILED JUNE 29,1893.   No. 4647.

Establishment of Streets: ACQUIESCENCE OF PROPERTY OWN-
ERS: ESTOPPEL: REPRESENTATIONS.   The owners of a tract of
land, having platted it as an addition to an adjacent town, so as
to show what appeared to be the prolongation of its streets,
though not so designated, and having for the period of eight
years acquiesced in the grading and public use of such appar-
ent streets, the erection of sidewalks thereon, and the construc-
tion of costly improvements upon adjacent private property in
such manner that if the existence of such streets is denied these
improvements will be rendered comparatively useless; and hav-
ing represented to one party, who, on the faith thereof, pur-
·chased a portion of said addition adjoining said apparent streets
that such portion would abut upon the same as streets, are es-
topped to deny the existence of the streets through such addition
of which they have thus superinduced such belief, and the reli-
ance thereon of the parties who have acted upon the faith of such
appearances, acts, and representations.

APPEAL from the district court of Hamilton county.
Heard below before POST, J.

*Howard M. Kellogg*, for appellants.

*Hainer & Smith*, contra.

RYAN, C.

The south half of the north half of the northeast quarter of section 4, township 10 north, range 6 west, of the 6th P. M., lies along and constitutes the northern front of the original town of Aurora, Nebraska. This forty-acre strip was divided into blocks numbered consecutively, from east to west, from 1 to 7 inclusive, alternating at regular intervals with north and south streets. By some mistake there was left adjacent to the north line of said strip a triangular piece, having its base of about 140 feet across, a short distance west of the northwest corner of said block 7, the two other lines of said triangle becoming coincident at the northeast corner of said forty-acre strip. Afterward the defendants, who owned a part of the north half of the north half of said quarter section, on the 6th day of June, 1881, duly filed a plat of such part as Stone's addition to the said town of Aurora. The written statement of the defendants, which was filed contemporaneously with said plat and constituted a part of the dedication of the land described, was, so far as it is at all useful, as follows:

"Stone's addition is situated on the north half of the north half of the northeast quarter of section four (4), town ten (10), range six (6) west, of the 6th P. M., in Hamilton county, Nebraska; commencing at a point seven hundred and forty-eight (748) feet west of the northeast corner of the aforesaid section four (4), and thirty-three feet south of said north line of said section four (4). The size of the blocks is given in figures in feet on said blocks of the plat. Each block is numbered on the plat. The width of the streets is given on the margin of the plat in figures in feet and named. Stakes are driven at the corners of each block. A mound with pits is made at the commencement of the town or addition."

The east line of this tract platted by defendants was formed by the prolongation northward of the east boun-

dary line of block 3 of that part of the original town to which reference has heretofore been made. The plat divided that portion of the north half of the north half of said quarter section lying west of the east line of block 3 of the original town of Aurora prolonged northward through said forty-acre strip by a street running east and west through the same, designated as "Seventh street," "Sixth" street lying along the south side of said forty-acre strip last referred to. The point of intersection of the north line of said section 4 with the aforesaid east line of block 3 of the original town of Aurora, prolonged, constituted the northeast corner of the block designated as (block) "1" on the recorded plat of Stone's addition. Thence the north tier of blocks were numbered consecutively westward to and including (block) "5," directly south of which, and across Seventh street, was located (block) "6," from whence eastward the blocks were numbered consecutively, so that (block) "10" was located just north of block 3 aforesaid of the original town of Aurora. Between said block 3 and block 4 of said original town of Aurora, Grand avenue, as a street, was prolonged northward by said plat between blocks 9 and 10, and 2 and 1 of Stone's addition aforesaid. In the original town of Aurora, Central avenue was located between blocks 4 and 5; Washington avenue between blocks 5 and 6, and Hamilton avenue between blocks 6 and 7. North of, and so as to constitute with uniformity a prolongation of Central avenue, the plat of Stone's addition showed between (blocks) 8 and 9 and between (blocks) 2 and 3 of Stone's addition, respectively, a strip which, from its appearance, might well be taken for a street. It was 100 feet wide, and between (blocks) 8 and 9 of Stone's addition it was designated as "16"; between (blocks) "2" and "3" of the same addition it was designated as "11." What resembled the prolongation of Washington avenue aforesaid extended northward between (blocks) "7" and "8" of Stone's ad-

dition under the designation of "15," and between (blocks) "3" and "4" of that same addition as "12." In like manner, opposite the northern end of Hamilton avenue aforesaid, there was a parallelogram of uniform width with Hamilton avenue, between (blocks) "6" and "7" of Stone's addition receiving the designation of "14," and between (blocks) "5" and "4" of the same addition receiving the designation of "13."

It will not escape careful observation that the blocks corresponding with blocks in the original town plat lay in two tiers running east and west; that beginning with (block) "1" at the northeast corner of the platted tract the blocks were numbered westward consecutively to and inclusive of "5"; that just south of "5" was located (block) "6," from which eastward the blocks were consecutively numbered to include "10"; that Grand avenue as found in the original plat aforesaid was prolonged northward through Stone's addition; that just west of (block) "2" of Stone's addition the strip which would naturally be taken for a street was numbered "11"; the like strip next found proceeding westward was numbered "12," the next "13"; that dropping into the southern tier of blocks in Stone's addition, what would naturally be taken as prolongations of streets of the original plat, were numbered, as progress is made eastward, respectively "14," "15," and "16." Their designations by numbers from "11" to "16," inclusive, are not described as streets, indeed, if we are to be governed solely by the language quoted as accompanying the plat filed, it would seem that each number not placed in what is expressly noted as a street stands for a block in every instance. Though David Stone testified in this case, there is nowhere to be found any attempt to explain why these strips, strongly suggestive of streets, were not designated as such, nor what purpose was to be subserved by giving each the very suggestive location and outline which it possessed.

The petition of nineteen plaintiffs alleged, in substance, that each of them resided and owned property in Stone's addition; that said addition was platted as above described by the defendants; that when said addition was platted the county surveyor, who surveyed the land for that purpose, was directed by defendants to lay out the said addition so as to extend Grand avenue, Central avenue, Washington avenue, and Hamilton avenue above referred to, through said addition, and be continuous in direction and width with such streets; that in accordance with such instructions said county surveyor did so lay out said streets through said proposed addition. The petition further stated the facts above set forth in the statement of his case descriptive of the manner in which said addition was platted, and the relation of the blocks and parts of said addition to the original town of Aurora, particularly describing the property interest of each plaintiff in said addition, as bearing upon the right of such plaintiff to relief as against the defendants in respect to said property interests. These plaintiffs alleged that the parts of Stone's addition designated as "11," "12," "13," "14," "15," and "16" have since the filing of said plat been used and graded as streets, and upon the same have been constructed and maintained sidewalks by the city of Aurora; that the defendants have sold the blocks laid off in said addition designated 1, 2, 4, 5, 7, 8, 9, and 10; that there have been erected upon said blocks a large number of houses, the only access to which is by the use of the strips 11, 12, 13, 14, 15, and 16 as streets; that upon the block designated as 6 is located the public school in said city of Aurora; that defendants have sold said blocks 1, 2, 4, 5, 6, 7, 8, 9, and 10 as blocks, and have represented that the streets heretofore mentioned and described were public streets; that said plaintiffs relied upon said representations and were induced thereby to purchase said premises owned by each of them severally, and

to make said improvements thereon, of each of which facts
the defendants had special notice ; that the defendants are
non-residents of Nebraska, but that their agent, under de-
fendants' instructions, is about to plow up and fence the
tracts designated as 11, 12, 13, 14, 15, and 16, so that
they shall not be used for streets as prolongations of Cen-
tral, Washington, and Hamilton avenues respectively ; that
if such plowing and fencing are done each plaintiff will
have no means of access to his home, and that by such
plowing and fencing the value and use of the property of
each plaintiff will be seriously impaired.   The prayer was
that defendants be perpetually enjoined from plowing and
fencing the strips numbered 11, 12, 13, 14, 15, 16, and 17
(the latter, as alleged, being a prolongation of Seventh
street), and that each of said tracts be declared a part of
the public streets of the city of Aurora.

The answer admitted the filing of the plat of Stone's
addition and the statement in connection therewith. There
was a denial of the other allegations of the petition.

On August 16, 1890, a trial was had and the issues joined
were found in favor of plaintiffs, and a decree rendered as
prayed in the petition.

It would subserve no useful purpose to enter into a de-
tailed review of the evidence of each witness. A general
summary of the facts will be sufficient.   In relation to di-
rect representations of the nature charged in the petition,
as to the intention of the defendants to prolong Central,
Washington, and Hamilton avenues through Stone's addi-
tion, there was the testimony of Mr. Giltner, who testified,
in addition to this, that upon the faith of these representa-
tions he purchased, before the filing of the plat of Stone's ad-
dition, a tract of land now embraced therein, which was upon
the plat afterward designated as block "1"; that in reliance
upon said representations said Giltner had built a large
and expensive house and had made his other improvements
upon said tract with reference to the streets as it was repre-

sented they should be laid out, which he otherwise would not have done. County Surveyor Parks, who laid out the addition, testified that David Stone, one of the defendants, directed him in so doing to set only the corners of the blocks, the streets to coincide with the north and south streets in Aurora; the blocks were to occupy a like size. This witness further testified that as far as he went he followed the above instructions, and that the parts of the tract which would be portions of the streets of Aurora extended have ever since been used as such, precisely as though such extensions existed, and that on them have been done grading and the erection of sidewalks thereon, consistently with such use, and that the improvement of their property by the residents of this addition, in the erection of houses and fences, has been with reference to the use of streets as contemplated in the above instructions to said witness with reference to laying out said addition. As to the general use of said property for streets in the manner detailed, and the making of permanent and valuable improvements upon their property by plaintiffs respectively with reference to said avenues being extended as contemplated, there was abundant uncontradicted evidence. There was also evidence of the occasional visits to Aurora, of no great duration, by the defendants during the period intervening between the platting of said premises (June 6, 1881,) and the commencement of this suit, during which defendants could not but have been aware of the above condition of affairs as to the improvements of private property, and the making of sidewalks, as well as of the grading and use of streets, though knowledge of these facts and the making of above representations were, by deposition, denied by Mr. Stone. There was also evidence that the agents of Mr. Stone for the sale and management of his property had at times represented that the strips in said addition opposite to said avenues were in reality streets, and that such representations were made to induce the sales of lots in said

addition. This evidence, however, is not very clear or satisfactory. The other evidence, however, is sufficient to satisfy us that while technically by the plat which they filed the defendants did not dedicate the strips designated as 11, 12, 13, 14, 15, 16, and 17 as portions of the public street, yet the positions occupied by these strips with reference to already existing streets naturally suggested that they were integral parts of the public highway. This inference was encouraged by defendants' silence while permanent improvements of these strips were being made as parts of the streets, and thereby plaintiffs were induced in good faith, relying upon appearances, to improve their private property; misled without doubt by this acquiescence and silence of the defendants. Not only so, but there was evidence of statements made by defendant David Stone inconsistent with the claim of exclusive private property now made by him in said tracts 11, 12, 13, 14, 15, 16, and 17, and of one party at least acting upon the faith of such representations to his injury, if Stone's present claim is now upheld. The contentions of plaintiffs further find great support in the improbability that any sane person would purchase and improve for a home property to which there is no means of access, as is the case with some of the lots in this addition if defendants' theory is correct. An examination of block 7, in said addition, shows that there are eight lots, which, under these circumstances, would be in this isolated condition, upon three of which are residences. These considerations lead us to the conclusion that by the representations and statements of David Stone made on behalf of both defendants with reference to the existence of the streets as by plaintiffs now claimed, and the acquiescence of the defendants in the improvement, use, and occupation of them for that purpose, considered in connection with the prejudice which will result to plaintiffs if such representations and acquiescence are not held binding, the defendants are, and should be, held estopped to

dispute the right of the public to control and use said tracts 11, 12, 13, 14, 15, 16, and 17 as parts of the public streets of the city of Aurora. The defendants seek to avoid this result by calling attention to the fact that if said avenues are prolonged, it must be by passing across the triangle referred to in the early part of the statement of facts in this case. Whatever obstacle this may hereafter present is no concern of the defendants. The plat which they filed does not show a triangle between Stone's addition and the original town of Aurora, and from the evidence it is clear that by the general public its existence has ever been equally ignored. The judgment of the district court is

AFFIRMED.

THE other commissioners concur.