NATHAN KESSELMAN ET AL., APPELLANTS, v. HERBERT GOLDSTEN ET AL., APPELLEES.

27 N. W. 2d 692

Filed May 29, 1947. No. 32209.

*Joseph H. McGroarty,* for appellants.

*Morsman & Maxwell, Leon, White & Lipp* and *Ray R. Simon,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an action by plaintiffs and appellants against the defendant Congregation B'Nai Israel to require the said defendant to specifically perform an alleged oral agreement to remove a cement walk over what plaintiffs claimed was a portion of a burial plot purchased

by them from the said defendant in Golden Hill Cemetery. This defendant will be hereinafter referred to as the Congregation. Herbert Goldsten and David Goldsten were made parties defendant for the reason, as it was alleged, that they wrongfully placed the walk and that they and the defendant Congregation B'Nai Israel refused to remove it. All defendants are appellees here.

A trial was had to the court whereupon a decree was rendered denying the relief prayed by plaintiffs and dismissing their petition. From this decree plaintiffs have appealed.

There are four assignments of error but they may all be summarized in the single statement that plaintiffs contend that under the facts and the law the trial court should have by its decree granted the relief prayed for in the petition.

Pertinent proved facts are that the Congregation at all times involved herein was the owner of Golden Hill Cemetery, a platted cemetery, the plat of which apparently was never recorded. On March 6, 1941, plaintiffs went with William Milder, a member of the Congregation and its representative, to the cemetery and selected a burial plot. The plot was not selected by reference to the cemetery plat but from observation and description by Milder. Milder gave the dimensions as 12 by 18 feet. The length was east and west. On the east end of the plot selected and across its width was a cement walk 18 inches in width. Milder stated that this was a part of the plot and that the synagogue (Congregation B'Nai Israel) would remove it. He said that the defendants Goldsten Brothers had placed it there without authority. No dealings were had by plaintiffs with any other member of the Congregation until long after the date of selection of the plot. The day after the plot was selected the body of plaintiffs' father was buried thereon. Receipt for payment of the purchase price of the lot was issued March 26, 1941.

It is the substantial contention of plaintiffs that they

contracted with William Milder as the representative of the Congregation and that by the contract with him the Congregation is bound; that by the contract thus entered into with Milder they purchased burial rights upon the plot described to them which included the area occupied by the 18-inch cement walk on the east end thereof; and that they are entitled to a decree of specific performance the effect of which would require the Congregation to remove the walk.

The contention of the Congregation is that plaintiffs purchased Plot 11, as it appears on the plat of the cemetery, whose dimensions were 12 feet by 16 feet and nothing more, and that the 18-inch strip on which the cement walk rests is no part of this plot but is a path reserved for the use and benefit of all owners of burial lots in the cemetery; that plaintiffs purchased their plot with full notice of the cement walk and its purpose and that they are barred and estopped from claiming any interest therein.

The defendants Goldsten for their defense substantially assert that they caused to be laid the 18-inch walk in question; that it is not a part of Plot 11 or of plaintiffs' plot but belongs to the Congregation and was reserved and dedicated by the Congregation and in the plat of the cemetery for the use and benefit of all owners of burial lots in the cemetery; that they own burial lots therein and have the right to its use; that plaintiffs purchased their plot with full notice of the walk; and that the said defendants are entitled to a decree protecting their right to the use of the walk against interference by the plaintiffs.

In support of their contention plaintiffs say substantially that the only contract of purchase they had was with William Milder on behalf of the Congregation, that it was entire, that it included the 18-inch strip, that it called for the removal of the walk, and that the agreement of purchase was binding on the Congregation in its entirety. They rely for support of their contention

upon the facts as disclosed by the record and on the following legal principles.

An act of an agent, although without actual authority from his principal, may be with such apparent authority as to bind his principal. Such apparent authority of the agent cannot be extended or restricted by bylaws or other instructions to the agent by the principal in the absence of actual notice thereof. Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145; Drainage District v. Dawson County Irrigation Co., 140 Neb. 866, 2 N. W. 2d 321.

"Whatever an agent or employee does in the lawful exercise of his authority is imputable to the principal, and where the acts of an agent or employee will bind the principal, his representations, declarations and admissions respecting the subject matter will also bind him, if made at the same time and constitute a part of the same transaction." Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596. See Webster v. Wray, 17 Neb. 579, 24 N. W. 207; Oberne v. Burke, 30 Neb. 581, 46 N. W. 838.

In opposition to this position of plaintiffs the appellees contend substantially that there was no valid and enforceable contract with the Congregation for the sale of the 18-inch strip for the following reasons: That the plaintiffs purchased their plot with reference to the description contained in the plat and the physical boundaries thereof as disclosed by boundary stakes; that William Milder was without authority to bind the Congregation to the sale of the 18-inch strip; that there was no contract in writing for the sale of the strip; that the cemetery was duly platted for cemetery purposes and lots and plots had been sold therein with reference to the plat which gave lot and plot owners vested rights in and to the use of the 18-inch strip as a passageway and that therefore no sale could be made thereof which would take away or burden these rights; and that the plaintiffs purchased their plot with full knowledge of

the condition and use to which the strip was being put which knowledge estopped them to assert any right to it as a part of their plot.

On the facts and the legal principles set forth it must be said that what William Milder did and what he said with regard to the sale of the plot in question, within the limits of which the Congregation could be legally bound, were binding upon it. This must be true because no other person ever participated in any negotiations with the plaintiffs, and on what took place between him and plaintiffs, they paid the price exacted of them, received the conveyance, and entered upon the use and occupancy of the plot. The contract was fully consummated by the Congregation on the action of William Milder as its agent. It cannot now in equity well be said that the Congregation should not be bound by the exercise of the apparent authority which plaintiffs had every right to believe was actual.

Further on the facts the claim of plaintiffs as to content and substance of the contract must be accepted as true. This is true because their testimony contains the only competent information as to its content and substance. There is no evidence to the contrary. On the record then it must be said that there was a contract and that it was for the sale of the plot including the 18-inch strip with provision that the Congregation would remove the cement walk.

Is the contract vulnerable to the attack that it was oral and therefore void under the statute of frauds and unenforceable in a court of equity? We think not.

The contract as proved, while oral, was entire; there was performance of each and every part thereof by both parties except removal of the walk by the Congregation; and the performance unequivocally indicates the existence of the contract alleged and may not be accounted for on any other reasonable hypothesis. The record in this respect meets the affirmative requirements of the controlling legal principle as follows:

"Specific performance of an oral contract to convey real estate may not be decreed on the basis of part performance unless the acts of part performance by the promisee, in relation to the subject-matter, in and of themselves unequivocally indicate the existence of the contract alleged and cannot be accounted for on any other reasonable hypothesis." Taylor v. Clark, on rehearing, 143 Neb. 563, 13 N. W. 2d 621. See, also, Cahill v. Mockett, 143 Neb. 730, 10 N. W. 2d 679; Crnkovich v. Crnkovich, 144 Neb. 904, 15 N. W. 2d 66; Diez v. Rosicky, 145 Neb. 242, 16 N. W. 2d 155; Lintz v. Apking, 145 Neb. 714, 18 N. W. 2d 55; Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513.

We conclude therefore that as between the plaintiffs and the Congregation, subject to the force and effect of the plat, the rights of others who had purchased lots or plots in the cemetery with reference to the plat, and the notice with which plaintiffs were charged on account of knowledge of the existence of the walk, the contract in question was a valid, binding, and enforceable contract.

That plaintiffs knew that this was a cemetery which was platted or at least subdivided into burial lots and plots there can be no question. This they observed, but their word that they saw no plat and did not contract with reference to one must be accepted. They observed the arrangement in the vicinity of their plot. They observed plots already used and occupied for burial purposes and were informed at the time that the defendants Goldsten were the owners of adjacent lots and that the Goldstens had constructed the cement walk in question. They were therefore, by what they observed and were told, put on notice as to others having rights or apparent rights in the cemetery.

Having had this notice they became bound in their dealings with the Congregation by the legal principle which prevented the Congregation from conveying to them any vested rights that other parties and particu-

larly the defendants Goldsten had in plots, appurtenances, and passageways in the cemtery. They took their plot subject to the rights of others of which they had actual or constructive knowledge. Lyon v. Gombert, 63 Neb. 630, 88 N. W. 774; McDonough v. Meany, 108 Neb. 496, 188 N. W. 187; De Conly v. Winter Creek Canal Co., 110 Neb. 102, 193 N. W. 157; Polyzois v. Resnick, 123 Neb. 663, 243 N. W. 864.

Whether or not the defendants Goldsten had rights in the passageway which could not be taken away by a contract depends upon the question of whether or not there was such a dedication of the plat as would give them a right of use of the strip as a passageway and the further question of whether or not they purchased their plot with reference to the plat as in this respect dedicated.

The evidence clearly indicates that they did purchase their lots with reference to and reliance on the representation of the plat that the 18-inch strip was dedicated to use as a passageway and with knowledge that at the time it was being so used.

We think that the question of whether or not there was a dedication of the plot with this strip as a passageway must be answered in the affirmative.

That there was no statutory dedication or recording of the plat appears clear, but these formalities are not essential to a dedication from which could flow the rights which the defendants Goldsten insist that they are entitled to have protected by a decree of a court of equity.

We conclude that there was a common-law dedication of the plat recognizable under the laws of this state. It is a well-settled principle that the survey and platting of real estate and the sale of plots therein with reference to the plat constitutes a common-law dedication of the passageways notwithstanding the plat and survey has not been recorded. Gregory v. Lincoln, 13 Neb. 352, 14 N. W. 423; Likes v. Kellogg, 37 Neb.

259, 55 N. W. 878; Pillsbury v. Alexander, 40 Neb. 242, 58 N. W. 859; City of Omaha v. Douglas County, 125 Neb. 640, 251 N. W. 262.

In Dunbar v. Oconomowoc Cemetery Asso., 189 Wis. 164, 207 N. W. 265, a case very much like the one here, the court in the opinion gave an expression which we think it well to adopt as determinative of the rights and liabilities of the parties to this action. It is: "While the *Cemetery Association* retains the fee in the alleyway, the lotowner obtains an easement for the free and unobstructed use of the same for passage purposes. The use of a lot for burial purposes is inconsistent with a public use for passage purposes; and the use of an alleyway for passage purposes is inconsistent with its use for burial purposes. When a lot adjoining an alleyway has once been sold for burial purposes, such lot and alley being designated on the plat, each serves a distinct and definite purpose, and such purpose cannot be interfered with or modified by the owners of the cemetery, or by any other person or persons, without affecting the vested rights of the lotowner."

It follows then that the plaintiffs may not have specific performance as prayed since the relief prayed would be an illegal invasion of the vested rights of the defendants Goldsten.

The decree of the district court is affirmed.

AFFIRMED.