23  795
50  884

CHARLES W. KING, APPELLEE, V. ANTON GSANTNER, APPELLANT.

Contract: SPECIFIC PERFORMANCE. The parties contracted with each other, June 2, 1884, for the purchase and sale of certain real estate in Crawford county, Missouri, and Council Bluffs, Iowa, respectively, executing deeds and depositing them, together with defendant's certified check for $500 additional consideration, in the Merchants National Bank of Omaha, to be paid when the defendant should ascertain that the plaintiff has a good title to the Crawford county land, the parties agreeing to make good any deficiency of title, respectively. In an action for specific performance, *Held*, That the plaintiff, in tendering an abstract of title, including a sheriff's deed to purchaser at tax sales, and his own deed of warranty, on the 8th of September, 1884, was possessed of a good, marketable title; that he had complied with his contract within a reasonable time, and that the defendant be required to accept and specifically perform the terms of the contract.

APPEAL from the district court of Douglas county. Heard below before NEVILLE, J.

*E. W. Simeral,* for appellant, cited: *Hudson v. Buck,* L. R., 7 Ch., 683. *Zaleski v. Clark,* 44 Conn., 821. *Taylor v. Williams,* 45 Mo., 80. *Williams v. Edwards,* 2 Simons, 78. Waterman Spec. Perf., Sec. 412. *Dobbs v. Norcross,* 24 N. J. Eq., 327. *Smith v. Turner,* 50 Ind., 367. *Jeffries v. Jeffries,* 117 Mass., 184.

*Breckenridge & Breckenridge,* for appellees, cited: *Oliver v. Piatt,* 3 How., 333. *May v. Le Claire,* 11 Wall., 217. *Ridgeway v. Holliday,* 59 Mo., 444. *Stoffel v. Schroeder,* 62 Id., 147. *Abbott v. Lindenbower,* 46 Id., 291. *Wellshear v. Kelley,* 69 Id., 343. *Morgan v. Hardy,* 16 Neb., 438. Adams Eq., 258–9, and notes.

COBB, J.

This cause comes to this court on appeal from the district court of Douglas county.

It appears from the petition that, on June 2, 1884, the plaintiff sold to defendant the south-east quarter of section 17, township 36, range 5, in Crawford county, Missouri, for the following consideration: The west half of lot 21, in block 59, of the railroad addition to Council Bluffs, Iowa, and the additional sum of $500. That the plaintiff and his wife executed a deed to the defendant, of the Missouri land, and that the defendant and his wife executed a deed to the plaintiff for the Council Bluffs lot, and also defendant's check on the Merchants National Bank for $500, subject to the following agreement:

"OMAHA, NEB., June 2, 1884.    Charles W. King and Anton Gsantner deposit in the Merchants' National Bank $500, with deeds, each to the other, of certain lands described in said deeds, said $500 to be paid to said King

when said Gsantner shall ascertain that said King has good title to the S. E. quarter of section 17, township 36, range 5, in Crawford county, Missouri," which was signed by the parties.  The deeds, with the certified check for $500, and the agreement, were deposited in the Merchants National Bank, at Omaha, to await the perfection of title.  At the same time it was also agreed that if the title of either party to the land and the lot was defective, each should have time and opportunity to make it good.

The plaintiff set up that his title was by warranty deed of February 13, 1884, from Miles M. Murphy, of Omaha, Nebraska, whose title was by warranty deed of May 2, 1882 (recorded February 16, 1884), from Daniel Murphy, of St. Louis, Missouri, whose title was by sheriff's deed of March 19, 1880; that said Daniel Murphy did, after the making of his deed to plaintiff's grantor, and before it was recorded, through inadvertence and mistake, quit-claim a part of the land to one Thomas E. Carr, but that at the date of contract and sale to defendant, June 2, 1884, he had no actual knowledge of such cloud upon his title to the premises, and that he proceeded immediately to remedy the same, and on the 8th day of September, 1884, the title was made clear and perfect, so that, on the 1st day of November following, the plaintiff produced and tendered to the defendant a full and complete abstract of title, together with a warranty deed therefor.

The defendant answered, admitting the execution of the deeds and check, and the written agreement, but denying that any time had been given plaintiff to perfect his title to the Missouri land, and setting up the defense that, on investigation, he ascertained that the plaintiff's title was only to eighty acres, or half of that conveyed, and this was derived through a *tax deed*.

The supplemental petition of the plaintiff, filed subsequently, set up that, in addition to the title derived from Miles M. Murphy, he had, since the commencement of the

action, obtained from Leighton Wynn a quit-claim deed for the Missouri land, and holds the same by good and indefeasible title.

In May, 1886, the case was tried to the court and taken under advisement until September 20th, following, when judgment was rendered for the plaintiff for the specific performance of the contract between the parties, and the payment by defendant of $500, with interest at seven per cent per annum, from the date of the contract, June 2, 1884.

From this judgment the defendant appeals. An agreement as to the facts and proof was submitted by the attorneys of record, which is considered in the foregoing statement. The appellant submits that there is error in the trial.

I. In allowing the plaintiff to file a supplemental petition after the proof was presented, and without notice to defendant.

It does not appear from the record that objection was made on the trial to the introduction of the proof under the supplemental petition, or that the proof was material to the issue, or of disadvantage to the defendant. The quit-claim of Wynn to the plaintiff for the Missouri land being admitted without exception, or the offer of rebuttal, the answer of the defendant would not become material. It would not tend to disprove the plaintiff's title, and is not deemed, therefore, sufficient to reverse the judgment.

II. In the construction given by the court to the words and terms of the written agreement of the parties at the time of the signing of the deeds, and the depositing of the check in the Merchants National Bank of Omaha; or, to give it the form of proposition: Whether the method and result of defendant's obligation to ascertain the validity of plaintiff's title was that of unlimited time and voluntary choice, or of such reasonable time and logical result as the legal construction of the agreement· of the parties

required? The appellant's view of the proposition is not sustained by the evidence, nor is it believed to be supported by apposite decisions. The rule is thought to be settled the other way.

The words of the agreement, that "said $500 to be paid to said King *when* said Gsantner shall *ascertain* that said King has a good title to the Missouri land," are believed to have been properly construed and applied by the court below, as meaning that the time for the payment of the money and delivery of the deeds was limited only to such reasonable time thereafter, *when* the plaintiff should produce and tender the defendant *a good, marketable, and indefeasible title*, which the court below adjudged the plaintiff possessed, and which he had tendered on the 8th day of September, following the agreement.

The case cited by counsel in support of the appellant, of *Hudson v. Buck*, Law R., 7, Ch. 683, was that of a contract for the sale of an encumbered leasehold, "subject to the approval of the title by the purchaser's solicitor." The sum of the mortgage was specified inexactly, the lessee was subject to restrictive covenants in the lease, as well as reserved rents, or premium, not mentioned prior to the contract, and not disclosed until the receipt, by the solicitor, of the abstract of title—objections not removed within a reasonable time. It was held that the property was not the estate bargined for, and that the purchaser was not, therefore, liable to the specific performance of the contract. The citation is not, therefore, accepted as an example in this case, where the vendor tendered to the purchaser, within a reasonable time, a sufficient title to the land, for the full consideration then in escrow.

In the case of *Williams v. Edwards*, 2 Simons, 78, a case cited in support of appellant, a bill was exhibited on articles of agreement, dated November 12, 1824, for the purchase of an incumbered estate, the contract to be void if the purchaser's counsel should be of the opinion

that a marketable title was not to be made by the 2d day of February following. In this instance, time was made of the essence of the contract by both parties, the contract to be canceled, in a contingency, on a day appointed. The contingency intervening, the vice chancellor discharged the purchaser of the specific performance of his contract. The essential element of time, established by both parties, is wanting in the appellant's case, which borrows nothing from this authority.

The case cited of *Zaleski v. Clark*, 44 Conn., 218, was an action of assumpsit for $150, the price of a bust of defendant's deceased husband, not satisfactory to the widow, in which it was held she was not liable. The parol contract was by a third party, on commission, under circumstances which lend no authority to the appellant's case, but are foreign to it.

In *Taylor v. Williams*, 45 Mo., 80, the circuit court of St. Louis held to the doctrine that, "whether a decree for specific performance shall be awarded in any particular case, is always a matter resting in the sound and reasonable discretion of the court, and that it is a reasonable exercise of this power to deny a decree, when its allowance would be harsh or oppressive in its operation on either party."

This rule is not without sufficient authority to support it (2 Story, 742), and that discretion, exercised in this case by the court below, will not be disputed in a review of the law of the case on appeal. It will be presumed, without evidence to the contrary appearing of record, that the decree was rendered, not arbitrarily, but under the exercise of a sound, reasonable, judicial discretion. In support of that presumption there is an absence of complaint that the decree is either "harsh or oppressive," for it but leaves the parties to the equal terms of their voluntary contract executed formally, in writing, before witnesses.

III. That the title of the appellee rests upon a sheriff's tax deed; that it is incumbent on him to show a good,

marketable title, and any reasonable doubt of it in the mind of the court should defeat the action.

It is sufficient to reply to this form of objection that the court below passed its judgment on the chain of title from the president of the United States, under acts of congress, down through all its various sales and transfers to the possession of the appellee, without a reasonable doubt, but with the judicial conviction of its marketable value, and without tangible objections by the appellant. The legislature of the state of Missouri had constituted the deed of a public officer *prima facie* evidence of title, "vesting in the grantee, his heirs and assigns, the title to the real estate therein described." The highest courts of Missouri had confirmed this legislative authority. (*Abbott v. Lindenbower*, 42 Mo., 162. 46 Id., 291). The sheriff's deed is, therefore, deemed *prima facie* evidence of all the executive and judicial facts necessary to a good, marketable title, and the *onus probandi* devolves on the appellant, if he would attack its validity. The same presumptions exist in favor of the validity of the sheriff's proceedings in enforcing an execution from the circuit court of Missouri in tax sales, as in all other executions at law. (*Wellshear v. Kelley*, 69 Mo., 343.)

The points of error as to the validity of the oral agreement as evidence, and the insufficiency of the record of judgments in the Missouri courts, are overruled, for the reason that the appellee's right to present a good and marketable title, within a reasonable time, was neither enlarged nor, in any sense, affected by the agreement of the parties to that effect. The sufficiency of the Missouri records, as corroborating the evidence of the custodian of the records of judgments and titles in Crawford county, was accepted by the district court; and a critical examination of the records, with the evidence, justifies the propriety of the credit given to these records by the district court.

51

The decree of the district court is therefore affirmed, except as to the amount of the money judgment; in respect to which it is the opinion of the court that interest on the five hundred dollars left in escrow should be computed only from the time of the perfecting of the title to the Missouri land, to-wit, September 8, 1884.

The cause is therefore remanded to the district court with the direction to modify the decree accordingly.

JUDGMENT ACCORDINGLY.

THE other judges concur.