EUGENE F. SEAVER ET AL. V. JOHN HALL.

FILED MARCH 3, 1897.   No. 7124.

1. **Vendor and Vendee:** BREACH OF CONTRACT: DAMAGES. When two or more persons have contracted to convey land to a third person, the vendors cannot, by contract or conveyance among themselves, release any of them from the obligation to respond to the vendee for damages arising from a breach of the contract.

2. ———: FAILURE TO MAKE TITLE: REMEDY OF VENDEE. Where a vendor of land cannot make title, the vendee may at his election recover payments of purchase money with interest, or damages for the loss of his bargain.

3. ———: ———: SPECIFIC PERFORMANCE. Where time is not of the essence of the contract, a vendor who is unable to make title at the time he should convey, may have specific performance by tendering good title at any time before decree, provided he has acted in good faith and specific performance can be enforced without injustice to the vendee.

4. ———: ———: ———: RENTS AND COSTS. In such case an awarding of rents to the vendee together with costs, in the absence of special circumstances adjusts the equities.

5. **Record for Review:** DATE OF FINDINGS. The record as to the time a finding was made prevails as against an objection based on the hypothesis that the finding was earlier made, in the absence of some showing of record in support of the objection.

ERROR from the district court of Douglas county. Tried below before BLAIR, J. *Reversed.*

*Wharton & Baird, Bartlett, Baldrige & De Bord,* and *Breckenridge & Breckenridge,* for plaintiffs in error.

*George W.* and *W. G. Doane, contra.*

IRVINE, C.

This action was begun by Hall against Eugene F. Seaver, George N. Hicks, James M. Swetnam, George W. Loomis, Amelia Burroughs, and Ella E. Latson to recover moneys paid to the defendants under a contract for the purchase of land. From a judgment for the plaintiff

the defendants prosecute error. The questions raised are for the most part questions of law of general application. The case was tried to the court, a jury having been waived, and the facts may perhaps be best stated by an abstract of the special findings, which, except in one particular, are admitted to be in accordance with the evidence.

On June 8, 1887, Hall entered into a contract with the defendants whereby defendants agreed to sell plaintiff lot 7, block 4, West Lawn Addition, to which the defendant then had a valid fee-simple title. The price was $425. The time for payment was extended, but final payment made June 14, 1893, and a deed demanded, which defendants were unable to make, because the defendant Seaver "had, through inadvertence and mistake, conveyed the same to one Ames, and so had put it beyond his power to convey the same to plaintiff, and defendants at that time had no title thereto." April 27, 1888, the defendants, who prior thereto had owned in common the tract of land known as West Lawn, including the lot in question, divided their respective holdings, lot 7, block 4, falling to the defendant Seaver. The other defendants executed to him a quitclaim deed and assigned to him their interest in the contract with plaintiff. All payments made thereafter were made to Seaver, "as they had been before that time," but plaintiff had no notice until he had fully completed his payments that the title did not remain in the defendants, as it was when the contract was made. When final payment was made Seaver promised to deliver a warranty deed, "but prior to that time the said Seaver had, as hereinbefore stated, through inadvertence and mistake, but without any intention whatever to commit any fraud upon plaintiff, conveyed (with forty-nine other lots) the said lot 7, block 4, West Lawn, to one George W. Ames, and learned such mistake on said June 14, 1893, and immediately upon ascertaining such fact entered upon negotiations with said Ames to procure a reconveyance of said lot from Ames to said Seaver, in

order that the said Seaver might make the conveyance of said lot to said Hall, but said negotiations failed because of the inability of Seaver to pay the price asked for said lot." July 18, 1893, plaintiff served notice upon the defendants of his intention to rescind the contract. Between June 14 and July 19 (when the suit was brought) Seaver endeavored to procure title, but failed to do so until March 15, 1894. After the negotiations between Seaver and Ames failed, defendant Loomis continued same, with the result that on March 15, 1894, Ames and wife reconveyed to Seaver. March 21, Seaver and wife made and tendered to plaintiff their warranty deed, which plaintiff refused. The title was then clear. Judgment was rendered for the amount which had been paid by Hall, with interest.

The first question presented relates to the measure of damages. It is contended that if the case be viewed as an action for money had and received, the judgment should have been against Seaver alone for moneys paid after the partition among the defendants, and, viewed as an action for damages for breach of contract, the measure would be the value of the lot at the time conveyance should have been made, and not the purchase price. There are no forms of action under the Code except where specially provided. The question is, does the petition state any cause of action, and if so, one calling for the relief granted? We do not think that the partition of the property among the defendants released any of them from liability to Hall. The contract was with all the defendants, and while they might by agreement among themselves partite the property and change their mutual rights and obligations, they could not by such action affect their obligations to Hall or discharge any of them from any of such obligations. While as among the defendants Seaver became entitled to receive the purchase money to his own use, Hall could still hold them all responsible for the performance of their contract and look to all for damages resulting from its breach, no matter

how those damages accrued. It is claimed that that part of the findings to the effect that plaintiff had no notice of the conveyance to Seaver is not sustained by the evidence. We think, however, it is. As to the measure of damages, it has been several times held that the vendee who has paid the purchase money may, on failure of title, recover it back, and this although the vendee was himself in default. (*Eaton v. Redick*, 1 Neb., 305; *Reed v. Beardsley*, 6 Neb., 493; *McPherson v. Wiswell*, 19 Neb., 117.) And this doctrine receives much support elsewhere. (See, for instance, *Stickter v. Guldin*, 30 Pa. St., 114; *Bassett v. Bassett*, 55 Me., 127; *Hurd v. Denny*, 16 Ill., 492.) There are other cases in this court holding that the vendee is entitled to the benefit of his bargain, and assimilating the rule of damages to that in cases of personal property. (*Wasson v. Palmer*, 13 Neb., 376; *Carver v. Taylor*, 35 Neb., 429; *Violet v. Rose*, 39 Neb., 660.) It would appear that this court has thereby placed itself on both sides of the much disputed question as to whether, when the vendor cannot make title, only nominal damages can be recovered, or whether the vendee is entitled to the benefit of his bargain. Some cases hold that the former rule applies where the vendor acted in good faith (*Conger v. Weaver*, 20 N. Y., 140), and that the latter applies when the vendor was guilty of fraud (*Pumpelly v. Phelps*, 40 N. Y., 59). If this distinction is to be observed, and it receives support in many states other than New York, the present case would, under the findings, be brought within the rule of nominal damages; that is, the damages would be nominal for the breach, but the vendee would be entitled to recover his payments, a result which would sustain this judgment. It may well be doubted, however, whether, in a state where exemplary damages are not permitted, the measure of recovery should depend on the good faith of the vendor. The object of the law is to afford compensation, and not to punish, in civil cases, and the actual damage is the same regardless of the motive of the vendor. We think, however, that the cases can be

reconciled on a more logical basis. The vendor should not
be permitted to speculate on his contract. If either rule of
damages should be enforced, to the exclusion of the other,
he would be permitted to do so.   If the rule of nominal
damages alone prevails, then if the land rises in value
the vendor may obtain the benefit of the increase by
breaking his own contract, as by putting it out of his
power to fulfill it... If the rule of substantial damages
alone applies, the vendor, when the property has fallen
in value, may keep the purchase money and the lot by
repaying only the decreased value of the lot.   The law
will not permit a party to so speculate and reap a profit
by violating his contract.   We think the true rule to be
that the law reposes in the innocent vendee an election
either to treat the contract as rescinded and recover back
what he has paid, or to ask damages for the breach.   In
this case he relied on rescission, pleaded the payments
made, and asked judgment therefor, thus exercising that
election.

The defendants next invoke the doctrine that where
time is not of the essence of the contract, and the vendor
is not able to make a good title at the time the contract
ought to be performed, nevertheless a court of equity will
afford him relief if he subsequently perfect his title and
tender a good conveyance before decree.   The general
principle has been several times recognized by this court.
(*Filley v. Duncan*, 1 Neb., 134; *King v. Gsantner*, 23 Neb.,
797.)   This proposition is met in the present case by sub-
stantially two arguments.   The first is that this is an
action by the vendee after rescission, and not a suit for
specific performance; the second, that specific perform-
ance will not be decreed unless the party seeking it has
been ready, prompt, and eager in the performance of his
part.   As to the first argument, it is sufficient to say
that the Code recognizes no distinction between proceed-
ings at law and in equity.   The defendant may interpose
an equitable defense.   In this case the defendants set
up the facts in their answer and prayed that the plaintiff

might be required to accept a conveyance.  If in an action by the vendor, who failed at the proper time to tender good title, the vendee will be required to accept it when subsequently tendered, there is no reason under our system of practice why the present ability to furnish a good title, and tender thereof, cannot be presented as a defense to the vendee's action for damages.  As to the second argument, the rule that a party to enforce specific performance must be ready and prompt on his part yields to the general doctrine that time is not of the essence of the contract, and does not prevail in such cases as this, where the vendor becomes able within a reasonable time to perform, where his contract was not speculative, but entered into in good faith, and when the situation of the other party has not been altered so as to render specific performance unjust to him.  One text-writer states the rule as follows: "It is accordingly held that if a substantial ownership exists, though the title be not fully cleared on the appointed day, specific performance may be decreed; and the court may rectify the incidental delay by giving the intermediate rents to the purchaser, and interest on the purchase money to the vendor."  (Adams, Equity, 88.)  Another says: "Courts of equity will also relieve the party vendor by decreeing a specific performance where he has been unable to comply with his contract according to the terms of it, from the state of his title at the time, if he comes within a reasonable time, and the defect is cured.  So if there has been no unnecessary delay courts of equity will sometimes decree a specific performance in favor of the vendor, although he is unable to make a good title at the time when the bill is brought, if he is in a condition to make such a title at or before the time of the decree."  (Story, Equity Jurisprudence, 777.)  Under the rule as first stated the vendees might in this case fail because they did not show a substantial ownership at the time they should have performed.  Under the rule stated by Story this is immaterial.  While most of the cases are where there was a

technical defect of title, the rule is usually. stated in the language of Story, and *Hepburn v. Dunlop*, 1 Wheat. [U. S.], 179, seems to have been a case where the defect was not simply a defect in the technical legal title. (See *Hepburn v. Auld*, 5 Cranch [U. S.], 262, and *Dresel v. Jordan*, 104 Mass., 407.) However this may be, we think the case of *King v. Gsantner*, *supra*, controls us here. One of the defects in the vendor's title in that case arose from the fact that before plaintiff's grantor had recorded his deed, his grantor had, through inadvertence and mistake, made a deed to a stranger. It was held that a tender of title several months thereafter was sufficient. The point discussed in nearly all the cases is not the character of the defect in the vendor's title, but his good faith and the practicability of awarding specific performance without injustice to the vendee. The findings are that Seaver, immediately on ascertaining that the lot had been conveyed to Ames, entered upon negotiations to reinvest himself with the title, and that before decree he had done so and tendered a conveyance. This seems to be sufficient. (Story, Equity Jurisprudence, *supra; Hepburn v. Dunlop, supra; McKinney v. Jones*, 55 Wis., 39; *Mussleman's Appeal*, 65 Pa. St., 480; *Leavitt v. Morrow*, 6 O. St., 71; *Brown v. Haff*, 5 Paige Ch. [N. Y.], 235.) It would seem, therefore, that the vendors brought themselves within the rule.

It is urged that the contract was for a warranty deed from all the defendants; that the other defendants conveyed to Seaver by deed of quitclaim; and that only Seaver's warranty was tendered. The bill of exceptions discloses that on the 13th of June, 1894, the defendants moved to reopen the case and for leave to introduce additional testimony. Such leave was granted and the defendants tendered a warranty deed to Seaver from the other defendants, duly recorded. A general objection to this deed as incompetent, immaterial, and irrelevant was sustained. It is asserted that this tender was not made until after the court had announced its findings. The transcript shows that the findings were made June 26,

and while the plaintiff objected to reopening the case on the ground that the findings had already been announced, the record does not disclose anything in support of the objection, and we must accept the evidence of the record rather than the inference from this objection not supported by the record.

There is nothing to show that there had been any change in the situation of the parties rendering it unjust to Hall to require him to accept performance, except what can be corrected by allowing him the rental value of the land pending the delay, and awarding costs against the defendants. This, we think, should be the course taken. The judgment of the district court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.