ROGER TATTERSALL ET AL., APPELLANTS, V. JAMES NEVELS, APPELLEE.

FILED DECEMBER 21, 1906.   No. 14,828.

1. Cities: WARDS. Under the provisions of section 2, art. I, ch. 14, Comp. St. 1903, the mayor and council of a city of the second class may change the number and boundaries of its wards, subject to the limitation therein contained that it shall not have less than two nor more than six wards.

2. **Partnership:** FREEHOLDERS. 'Where a partnership firm is the owner in fee of real estate situated in this state, each member of such partnership firm is possessed of a freehold interest in such realty.

3. **Liquor License:** EVIDENCE. Evidence examined, and *held* sufficient to sustain the judgment of the trial court.

APPEAL from the district court for Boone county: JAMES N. PAUL, JUDGE. *Affirmed.*

*C. E. Spear* and *H. C. Vail,* for appellants.

*F. J. Mack, M. W. McGan* and *J. S. Armstrong, contra.*

OLDHAM, C.

This is an appeal from a judgment of the district court for Boone county, Nebraska, sustaining the action of the mayor and council of the city of Albion in granting a license to sell liquors to James Nevels, the applicant therefor. The only allegations of error in the proceedings specifically called to our attention in the assignment of errors filed in this court by the remonstrators are with reference to the sufficiency of the testimony to sustain the finding that certain of the signers of the applicant's petition were resident freeholders of the first ward of Albion. Applicant's petition for a license was filed with the city council on the 19th day of June, 1906, and contained the names of 40 persons, who signed as resident freeholders of the first ward of Albion. A remonstrance was filed by the appellants herein, which alleged, among other things, that the petition was not signed by 30 resident freeholders. It also alleged that certain of the petitioners, naming them, were resident freeholders of the original third ward of Albion, and had been brought into the first ward by a change in the boundary lines of the ward, provided for by ordinance No. 127, which was passed by the mayor and council on the 28th day of May, 1906. The remonstrance also alleged the pendency of the injunction proceedings

against the enforcing of this ordinance, which we have set out and examined in the case of *Young v. City of Albion, ante,* p. 678. Of the 40 original signers to the petition 4 withdrew before the final hearing of the case on the petition and remonstrance. No evidence was introduced tending to show that 5 of the remaining 36 signers were resident freeholders. It was stipulated in the record that 27 of the remaining 31 signers were resident freeholders of the first ward of Albion, as constituted by ordinance No. 127.

It is urged by the remonstrators that there is no authority under the statutes given to cities of the second class to reduce the number of their wards, and that, as the city had been divided into three wards by ordinance No. 98, enacted in the year 1903, the attempted reduction of the number of wards by the passage of ordinance No. 127 was *ultra vires* and void. Section 2, art. I, ch. 14, Comp. St., provides that each city of the second class "shall be divided into not less than two nor more than six wards, as may be provided by ordinance." To our minds this section of the statute plainly and clearly invests the city council of cities of this class with authority to divide the city into wards, within the limitation prescribed; that is, they shall not make more than six nor less than two wards. There is no limitation in the statute as to the number of times that the city may be divided, nor as to the power to either increase or diminish the number of wards within the limits prescribed. We are therefore of opinion that the city council acted within the scope of its delegated powers when it changed the number of wards from three to two.

Under this view of the case we think that the evidence was sufficient to show that the eleven resident freeholders who were added to the first ward by the passage of ordinance No. 127 were competent signers on the petition. Under the stipulation in the record, these, with the others admitted to be resident freeholders, constituted 27 competent signers, and leave but 4 of the 31 in dispute. Of

these four it is urged against the sufficiency of the proof with reference to one, Charles Klever, that the evidence does not show that he is a freeholder in the first ward, and that he nowhere testifies that he is a resident of such ward. This objection would be fatal were it not for the fact that the remonstrance alleged that he (Charles Klever) was among those who were residents of the old third ward and had been brought into the first ward by ordinance No. 127. In view of this allegation of the remonstrance, we think the evidence was sufficient to show him a resident of the first ward. He testified that he was a freeholder and no objection was made to the competency of the evidence. The sufficiency of the proof as to Lester Waring is also challenged. He testified that he was a resident freeholder of the first ward, but on cross-examination it was shown that the property which he claimed to own stood in the name of Waring Brothers, a firm composed of Lester and Fred Waring. It is urged that, as the real estate was owned by the partnership, it should be treated as personal and not as real property. It is true that for certain purposes partnership real estate is treated by a doctine. of equitable conversion as personalty in the settlement of the affairs of the partnership. We think the American rule with reference to partnership real estate is correctly stated in 22 Am. & Eng. Ency. Law (2d ed.), 106, in which it is said: "In the absence of any contrary agreement, express or implied, between the partners, firm realty retains its character as such, with all the incidents of that species of property, except that each share of the partnership realty is impressed with a trust implied by law in favor of the other partner or partners that so far as necessary it, shall be first applied to the adjustment of partnership obligations and the payment of whatever balance may be found due between partners on winding up the firm's affairs; and, to the extent necessary for these purposes, the character of the property is in equity deemed to be changed into personalty." Under this view of the nature of partnership real property, we think the evidence sufficient to show

that the signer to the petition, Lester Waring, was a resident freeholder of the ward.

It is urged against another of the disputed signers, George W. Williams, that he was not a resident freeholder of the ward, because the evidence showed that at the time he signed the petition the deed to his real estate was held in escrow pending the completion of the title and the payment of part of the purchase money. The evidence, however, showed that before the hearing his title had been completed, and he had received the deed and had placed it on record. We think this showing sufficient. As these 3, added to the 27 already considered, constitute 30 resident freeholders of the ward, it is not necessary to examine the objection urged to the signature of Mary Brown.

Finding no reversible error in the action of the trial court, we recommend that the judgment of the district court be affirmed.

AMES, C., concurs.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.