HENRY SCHLAKE, APPELLANT, V. EDWARD J. HEALEY ET AL., APPELLEES.

FILED MARCH 1, 1922. No. 21917.

1. **Vendor and Purchaser:** RESCISSION. Where a vendee of real estate takes possession of the land under an executory contract of purchase, he cannot rescind the contract and recover back that portion of the purchase price paid by him, because of alleged defects in the title tendered, without first offering to surrender possession of the real estate to the vendor.

2. ————: SPECIFIC PERFORMANCE. Where an executory contract for the purchase and sale of real estate required the vendor to furnish an abstract showing good record title on or before April 1, 1920, and time was, in express terms, made an essential element of the contract, and the vendee took possession of the real estate after the abstracts of title had been delivered to him, he could not, while holding such possession, and without offering to surrender it to vendor, insist upon his right to an abstract showing good record title on April 1; and where the vendor asked the aid of a court of equity to compel specific performance, and vendee retained possession of the land up to the time of trial, a decree requiring specific performance of the contract was proper if the evidence showed good record title in vendor at the time of the trial and decree.

3. **Partnership:** DEEDS: TRUSTS. Where a partnership name contains the full name of one of the partners, a deed of real estate to such partnership, in its firm name, vests the legal title in the partner whose name is thus disclosed, who holds it in trust for the other members of the firm according to their several in-

terests in the partnership, and an equitable title is by such deed vested in the partnership, first, for the benefit of the firm business and creditors, and, second, for the adjustment of the mutual rights of the partners as between themselves and in the adjustment of their accounts with the firm.

4. ———: CONVEYANCES. Where real estate is deeded to a partnership in its firm name, and the firm name contains the name of one of the partners in full, and the partnership winds up its affairs, discontinues business, and pays all of its debts, a deed from all the members of such partnership will convey good title to the grantee.

5. Public Lands: HOMESTEAD: VESTING OF TITLE. Where a claimant of land under the United States homestead act has made final proof at the proper land office of having done every thing required to entitle him to a patent, he is the real owner of the land, regardless of whether the government patent has been issued or not. Until the issuance of the patent, the government holds the legal title merely as trustee for him.

6. ———: ———: ———: DEVISE FOR PAYMENT OF DEBTS. A claimant of land under the United States homestead act, who has made final proof at the proper land office of having done everything required to entitle him to a patent for the land, may, at any time thereafter, and without waiting for the issuance of the patent, devise such real estate by will, or, by adequate provisions to that end in his will, he may authorize his executor to sell such land for the payment of his debts, regardless of when such debts were contracted, and, if he dies before the patent is issued, leaving no surviving spouse, whose homestead rights under state law might intervene, a deed made by his executor in the exercise of the power of sale in the will, for the purpose of paying debts against the estate of deceased, conveys good title to the purchaser, and the patent, when issued, inures to the benefit of such purchaser and his grantees.

7. ———: ———: ———: ———. The provision of the United States homestead act which exempts a government homestead from liability for the payment of debts contracted prior to the issuance of the patent does not deprive the homestead entryman from voluntarily subjecting such land to the payment of such debts, and this he may do by suitable provisions in his will, if he leaves no surviving spouse who is in position to interpose homestead rights under the state law.

APPEAL from the district court for Knox county: ANSON A. WELCH, JUDGE. *Affirmed.*

*A. R. Oleson,* for appellant.

*W. A. Meserve, contra.*

Heard before MORRISSEY, C. J., FLANSBURG and AL-
DRICH, JJ., HOSTETLER and MORNING, District Judges.

MORNING, District Judge.

On September 29, 1919, appellant, Henry Schlake,
entered into a written contract with appellee, Edward J.
Healey, whereby said Schlake agreed to purchase of said
Healey 240 acres of land located in Knox county. The
total consideration for the purchase was to be $42,000,
payable as follows: Cash $2,500 to be paid at the time
of entering into the contract, $7,500 on or before April
1, 1920, and the remainder of $32,000 to be secured by
first mortgage on the land, payable April 1, 1930. When
the contract was signed Schlake paid to Healey the cash
payment of $2,500 called for by the contract, and on or
about February 20, 1920, Healey delivered abstracts of
title to Schlake, who turned them over to his attorney for
examination. On March 2, 1920, Schlake's attorney re-
ported the result of his examination to Schlake in writing,
wherein he pointed out certain defects in the title, as
shown by the abstracts, which he considered sufficiently
serious to prevent him from approving the title. After
receiving said abstracts, and on March 1, 1920, Schlake
took possession of said land, as provided in said contract,
and placed a tenant thereon, and said tenant was still in
possession at the time of the trial in the lower court, and
possession has never been tendered back to Healey, either
by Schlake or his tenant.

On or about March 2, 1920, Schlake returned to Healey
the abstracts, together with the written objections made
to the title by the former's attorney.

On April 1, 1920, Schlake called on Healey, and after
some controversy as to the condition of the title—Schlake
insisting that the title to both tracts was bad, and Healey
insisting that he considered them good—Schlake declined

to proceed further under the contract and demanded a return of the $2,500 paid by him on the purchase price but declined to have anything to do with removing his tenant from the land, stating, in substance, that, since he did not own the land, he could not dispossess the tenant On cross-examination Schlake gives the following version of what was said on that occasion:

"Q. Mr. Healey told you he was ready to give you the deed and that he thought the title was good? A Yes; he thought so. Q. You told him it wasn't? A Yes, sir. Q. But Mr. Healey said it was good? A Yes, sir. Q. After you talked the matter over at Creighton you told Mr. Healey you wouldn't go through with the deal the way the title was? A. The contract called for a clear title on or before the 1st of April. Q When you found the title was not in any different shape than when Mr. Oleson had examined the title, you decided not to go through with the deal? A. Yes, sir Q. And you tried to get Mr. Healey to say he would take the tenant as his tenant? A. Yes. Q. What did Healey say? A. He said he wasn't the right man. Q He said he wouldn't do it? A. I don't know that he said he wouldn't do it. I said I wouldn't have any more to do with it; I was through. Q. You didn't make any attempt to put Mr. Wells off? A. No; I couldn't do it; it wasn't my place. Q. You never have made any attempt to put Mr. Wells off that place? A. No; I never paid any attention to it any more."

Mr. Healey, the appellee, testified concerning this interview as follows:

"Q. Tell the court what was said by Mr. Schlake and yourself when he came up the 1st of April. A. Well, he came to the store and we talked the matter over a few minutes, and he said that he had come to settle for the land; and I told him I was ready to perform my part of the contract, and he objected to making a settlement because he claimed the title was clouded, or wasn't right. I disagreed with him. I told him I believed the title to

be right and to be good, and he wanted me to take the land back and pay him back the $2,500. I refused to, for the reason that he had already had possession. At that time I said, 'You already have possession of the land and I don't see how you can expect me to give you back the money.' I said, * * * 'I am ready to go to the bank right now and put up my deed.' And I went on to tell him if the title wasn't right in every way he could put up his money in escrow and put up the mortgage, and at the same time I would put up my deed, and that if I couldn't make the title satisfactory to him I would return every dollar he had paid. He refused to do that so, of course, he having possession of the land, I didn't feel that I wanted to return the money to him."

On April 24, 1920, appellant, Schlake, commenced this action in the court below against Healey and his wife to recover back the $2,500 paid by him on the purchase price at the time of signing the contract, basing his right to such recovery upon the alleged failure of Healey to furnish abstracts showing good record title to the land on or before April 1, 1920. Healey and wife filed their answer and cross-petition admitting the receipt of the $2,500 but alleging that they were willing and able to comply with all of the terms of said contract to be performed by them on April 1, and at all times since, and alleged further that Schlake on March 1 took possession of said land, as he was authorized to do by said contract, and that he still retained possession, and had not offered to yield up or surrender possession to defendants, and that he had thereby waived any right he may have had to forfeit or rescind said contract; and defendants, in their cross-petition, prayed specific performance of said contract. The trial in the court below resulted in a dismissal of plaintiff's petition and a decree of specific performance in favor of Healey. Schlake appealed to this court.

Did the abstracts of title furnished by Healey to Schlake show good record title in Healey on April 1,

1920? If they did not, then did Schlake, by taking and retaining possession of the land, waive the time limit specified in the contract, together with his right to rescind, and thereby place it in the power of Healey to enforce specific performance of the contract by tendering good record title at or before the time of the trial?

The contract covered two separate tracts of land, and separate abstracts were furnished for each tract. Schlake's attorney, in reporting the result of his examination of the abstracts, declined to approve the title to either tract for reasons stated by him, and these furnish the basis of Schlake's refusal to accept the title, and for his action to recover back that portion of the purchase price paid by him. The contract here involved contained the following provision:

"The party of the first part (Healey) is to furnish to the party of the second part (Schlake), or assigns, a warranty deed and a good and sufficient abstract of title showing a good title of record to the premises hereinafter described in the party of the first part, on or before April 1, 1920, assign all insurance on buildings, pay all taxes assessed against said land, and, if there is a mortgage on said property, pay interest thereon up to April 1, 1920, and give possession by March 1, 1920. It is mutually agreed that time is an essential element in this contract."

Appellant insists that, since time was of the essence of the contract, the rights of the parties are to be determined as of April 1, 1920, and by the condition of the record title as shown by the abstracts on that date, and that any corrections in the record title thereafter made or thereafter placed upon the abstracts, are immaterial. Under the circumstances disclosed by the record, we cannot agree with the appellant in this contention. Appellant received the abstracts about the 20th day of February and was charged with knowledge of the condition of the record title disclosed by them, yet thereafter, and on March 1, he took possession of the land, placed a tenant

Schlake v. Healey.

thereon, and has continued to hold such possession. While so in possession, appellant was in no position to rescind his contract. To entitle him to do so, it was necessary that he should promptly restore possession to Healey. *Stewart v. Tate,* 103 Neb. 28; *Gallagher v. O'Neill,* 78 Neb. 671; *Alfree Mfg. Co. v. Grape,* 59 Neb. 777; *Sherrill v. Coad,* 92 Neb. 406. The excuse offered by appellant for not dispossessing his tenant is that he could not do so since he did not have title to the land. His inability to oust the tenant and restore possession of the land to Healey was the result of his own voluntary act after he received the abstracts and had knowledge, or means of knowledge, as to the condition of the title, and he cannot avail himself of his inability to oust his tenant as an excuse for not restoring possession to appellee. This was a risk assumed by him when, with knowledge of the condition of the title, he placed his tenant in possession. He was not in a position to insist upon a return of the money paid by him on the purchase price so long as he retained possession of the land, and if, at the time of the trial of the case in the district court, Healey tendered a good record title, the latter was entitled to specific performance, and the decree appealed from was proper and should be affirmed. *Seaver v. Hall,* 50 Neb. 878; *Gallagher v. O'Neill,* 78 Neb. 671; 27 R. C. L. 649, sec. 410; 25 R. C. L. 277, sec. 78.

One of the objections urged by appellant to the title is that the abstracts furnished to him prior to April 1 did not show payment of taxes for 1919. Another objection is that the abstract to one of the tracts showed an unreleased mortgage of $5,000. The evidence shows that Healey had arranged for the payment and discharge of said mortgage prior to April 1, and was, on that day, ready and able to have it discharged, but did not have it done because of appellant's refusal to proceed further under the contract. It is further shown in the evidence that all of the taxes for 1919 were paid prior to April 1,

and that said mortgage was discharged of record on April 8, 1920.

Another objection to the title to one of said tracts, as disclosed by the abstract delivered to appellant in February, 1920, is that, in the chain of title, there appeared two deeds to copartnerships as grantees, and that whatever title was thereby vested in said copartnerships has never been legally conveyed to appellee and his grantors. Said abstract shows that on October 8, 1903, an affidavit of J. E. Buxton was filed for record in the office of the register of deeds of Knox county, Nebraska, wherein said affiant states that he was a member of both of said firms, and wherein he gives the names of all of the other members thereof. The affidavit, so recorded, is *prima facie* evidence of the facts therein stated. Sections 6253, 6254, Rev. St. 1913. And the abstract shows that all the members of both of said partnerships, together with their several spouses, conveyed their several interests in said real estate to the said J. E. Buxton, who, together with his wife, conveyed the title thus derived to appellee. As we understand this objection, it is that these conveyances vested in said copartnerships an interest which the individual members of the firm could not convey by their individual deeds. There is much confusion and apparent want of harmony in the authorities as to the precise nature of the title which is conveyed by a deed to a partnership, in its partnership name, and the method by which such title may be passed on to a subsequent purchaser so as to vest good title in the latter. In *Barber v. Crowell*, 55 Neb. 571, this court held that a partnership, as such, is incapable of taking the legal title to real estate. In *Dineen v. Lanning*, 92 Neb. 545, we held that a deed to a partnership in the firm name is not void, but vests an equitable title to the real estate in the firm for the benefit, first, of the partnership business and creditors, and, second, for the individual members. In *Tattersall v. Nevels*, 77 Neb. 843, it was held that real estate standing in the firm name con-

stitutes the individual partners freeholders qualified
to sign a petition for a saloon license.  We do not find
that this court has ever determined whether such a deed
leaves the legal title in the original grantor or whether
it vests in the individual partners, nor how such title
may be passed on to a subsequent grantee.  It is quite
generally held by the authorities that, where the part-
nership name is a fictitious one, and does not contain
either the full name or the surname of any of the part-
ners, an equitable estate only passes to the firm, the legal
title remaining in the grantor.  Such a deed may be
reformed in equity by inserting the names of the in-
dividual partners as grantees, and this, when done, vests
the legal title in the partners.  1 Rowley, Partnership,
sec. 284; *Dunlap v. Green,* 60 Fed. 242.

Where the partnership name contains either the full
name or the surname of one or more of the partners,
the general rule seems to be that the legal title vests
in those members whose full names or whose surnames
are disclosed in the partnership name, and such mem-
bers hold the title in trust for all the members of the
firm according to their actual interests therein.  Mechem,
Partnership, secs. 84, 284; 30 Cyc. 431; 1 Rowley, Part-
nership, sec. 269.  And parol evidence may be received
to show the full names of those whose surnames only
are disclosed in the firm name, and to identify those
members whose names do not appear at all.  *Holmes v.
Jarrett, Moon & Co.,* 7 Heisk. (Tenn.) 506; *Menage v.
Burke,* 43 Minn. 211, 19 Am. St. Rep. 235; *Blanchard
v. Floyd & Huguley,* 93 Ala. 53.

One of the deeds which is the basis of this objection
ran to J. E. Buxton & Company, and the other to W. P.
Todd & Company.  J. E. Buxton and W. P. Todd have
both conveyed whatever title they held in the land to
appellee or his grantors.  The affidavit of J. E. Buxton,
to which reference has been made, shows that he was a
member of both of said partnerships, and the names of
all the other members of said firms are therein stated by

him. The abstract shows that all the members of both
of said firms also conveyed their interest in said real
estate to grantors of appellee. It is therefore unnecessary
for us to decide whether or not the members of said
firms whose names were disclosed in the firm name
had legal authority to convey the entire title without
the other members joining in such conveyance, since
all authorities, we believe, hold that a deed from all
the members of the partnership will convey good title to
partnership real estate, except, under special circum-
stances, as against partnership creditors. Even if the
rights of the parties were to be determined by the condi-
tion of the record title as shown by the abstracts on April
1, we do not believe that any right of partnership cred-
itors would be involved. True, the affidavit of J. E.
Buxton, to which we have referred, and which was of
record, and was shown on the abstract, as originally
delivered to appellant, did not show that there were no
unpaid firm debts against either of said partnerships,
nor that there were no bankruptcy or other court pro-
ceedings pending in Vermont to liquidate and wind up
the affairs of said firms. The land being in Nebraska,
and no steps having been taken here by any firm creditor,
if there were any, to subject this real estate to the pay-
ment of partnership debts, a purchaser in good faith,
receiving a deed from all the members of said partner-
ships, would receive good title free from danger from
liability to firm creditors. In *Case v. Beauregard,* 99
U. S. 119, the United States supreme court held that
simple contract creditors have no lien upon partnership
property which enables them to follow the firm property
into the hands of a *bona fide* purchaser. It was there
held that each partner has an equitable right to insist
that firm property shall be first applied to the payment
of firm debts before being diverted to the individual
use of any of the members, or applied to the payment
of their individual debts, and that courts of equity
will permit the firm creditors to avail themselves of this

equity of the partners, and, through it, enforce the application of firm property to the payment of partnership debts. It is a right, however, dependent upon certain conditions and hedged about by very definite limitations, as the court, in that case, points out thus:

"It is indispensable, however, to such relief, when the creditors are * * * simple-contract creditors, that the partnership property should be within the control of the court and in the course of administration. * * * If, before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end."

But, since appellant had taken and retained possession of the real estate under the contract, he lost his right to have the title tested in the light of the record as disclosed by the abstract on April 1. Under the circumstances, appellant brought himself within the rule announced in *Seaver v. Hall*, 50 Neb. 878, and the rights of the parties are to be determined by the state of the title, not as the abstract showed it to be on April 1, but as it was, and as the court found it to be, at the time of the trial.

The evidence shows that while this suit was pending, and on the 23d day of September, 1920, there was filed in the office of the register of deeds of Knox county another affidavit of said J. E. Buxton, in which he states that the names of the several members of said two partnerships were correctly given in his previous affidavit above referred to, that he was a member of both firms, and that in the year 1889 the business and affairs of both of said partnerships were dissolved, their affairs wound up, and all debts against them paid, and that, from that time to the present, there have existed no debts or claims against either of said firms. This affidavit

being of record, and being *prima facie* evidence of the facts stated, as provided by sections 6253, 6254, Rev. St. 1913, if there had been any possible doubt as to the title to said land being free from danger from liability to firm creditors, it was completely removed. At the time of the trial, therefore, appellant was able to show, and did show, that there was no defect in his title arising from said partnership deeds or from the method employed to convey said title from said partnerships, and from the members thereof, to appellee.

One of the objections to the title which is quite seriously urged is based upon the following facts: One of the tracts involved here was entered by Elizabeth Jamison as a government homestead, the abstract first tendered showing that the receiver's final receipt was issued to her on the 16th day of October, 1889, and that the patent was issued to her September 18, 1891. The abstract, as first tendered, showed that said Elizabeth Jamison died on July 30, 1887, leaving a will, which was admitted to probate, and that L. F. Renne was appointed and qualified as executor of said will. Said will contained this provision: "I direct that my funeral charges, the expenses of administering my estate, and all my debts be paid out of my personal property. If that be insufficient I authorize my executor hereinafter named to sell all my real estate." The inventory filed by the executor in the county court showed that said homestead and some personal property, of the value of $187.63, were all of the assets of said estate. Claims were allowed against said estate in the aggregate sum of $1,556.22. There being insufficient personal property to pay the claims allowed, and there being no other real estate, the executor, acting under the authority contained in said will as quoted above, sold said real estate to one N. Paulson, who in turn conveyed it to appellee Healey. The point sought to be made by appellant against the title thus derived is that, since this land was a government homestead, it was not subject to be sold

to pay debts of the deceased contracted prior to the is-
suance of the patent; that since the receiver's final re-
ceipt and the patent were both shown by the abstract
to have been issued after the death of Elizabeth Jamison,
she had no title to the land at the time of her death
which she could dispose of by will or which her executor
could, under the authority contained in the will, sell
to pay her debts; that the title thus derived through
the patent formed no part of the estate of the deceased,
but went directly from the government to the heirs of the
deceased. The abstract delivered to appellant, and upon
which his objection was based, did not show when
Elizabeth Jamison entered said land, nor when, if ever,
she made final proof under her homestead entry. It only
showed the issuance and recording of the receiver's
final receipt and the patent at dates subsequent to her
death. On April 1, 1920, when, under the contract be-
tween appellant and appellee, the latter was obligated to
furnish an abstract showing good record title in himself,
the abstract tendered did not show that Elizabeth Jami-
son, at the time of her death, had any interest in, or title
to, said land upon which her will could operate for
any purpose, and, had appellant, on that date, yielded
up possession of the land, this deficiency in the abstract
would, no doubt, have placed him in a position to rescind
the contract and recover back the money paid by him
on the purchase price, and to defend successfully against
appellee's cross-petition for specific performance. This,
however, he did not do, and appellant could not be called
upon to refund that part of the purchase price which
had been paid, so long as appellant remained in pos-
session of the land through his tenant. And if, at any
time before the decree was entered, appellee tendered
an abstract whereby the defect pointed out was cured,
and good record title shown in appellee, the latter was
in a position to call for specific performance upon the
record as it was then shown to be. At some time be-
tween the 1st of April, 1920, and the time of the trial

appellee procured from the United States general land office a certified copy of the homestead application of said Elizabeth Jamison, showing that her homestead entry was made March 16, 1883, certified copies of final proof made by said Elizabeth Jamison in person on May 17, 1887, and, also, a certified copy of a letter from the commissioner of the general land office to the register and receiver of the local land office at O'Neill, under date of August 25, 1889, advising said officers that the final proof made by Elizabeth Jamison on May 17, 1887, was satisfactory and directing them to issue the final receipt. These certified copies were placed in evidence, and are shown to have been recorded in the office of the register of deeds of Knox county, Nebraska, and are now a part of the record title to said property. These were sufficient to show that Elizabeth Jamison, during her lifetime, had done all things necessary to entitle her to a patent to said land, and that she had made satisfactory proof thereof. This gave her such interest in said land that she could dispose of it by will, or authorize its sale by her executor for the payment of claims against her estate. *Doran v. Kennedy,* 237 U. S. 362; *Axtell v. Warden,* 7 Neb. 182; *Carroll v. Patrick,* 23 Neb. 834; *Bellinger v. White,* 5 Neb. 399; *Cheney v. White,* 5 Neb. 261; *Jones v. Yoakam,* 5 Neb. 265; *Hays v. Wyatt,* 19 Idaho, 544, 34 L. R. A. n. s. 397.

The record shows that said deceased had never been married and that she had no children, and it follows that no homestead rights of a surviving husband, under our state law, are involved. In *Seaver v. Hall,* 50 Neb. 878, this court held that, where time is not made the essence of the contract, a vendor of real estate is entitled to specific performance of his contract if at any time before the entry of the decree he is in a position to furnish satisfactory title. We think appellant was in the same position as if time had not been made the essence of the contract involved in the present case, since he

deprived himself of the benefit of that provision by retaining possession of the land.

The decree of the lower court was right, and is

AFFIRMED.