W. H. H. PILLSBURY, APPELLEE, V. JOHN C. ALEXAN-
DER ET AL., APPELLANTS.

FILED APRIL 17, 1894.   No. 5699.

1. **Dedication**: FAILURE TO ACKNOWLEDGE PLAT: ESTOPPEL.
   The state of Nebraska sold to Arnold & Abbott certain land and
   gave them a contract for a deed; Arnold & Abbott caused this
   land to be surveyed and platted into lots, blocks, and streets, and
   designated as "Arnold & Abbott's Addition to Grand Island."
   They did not attach or acknowledge or sign a certificate to such
   plat as required by section 105, chapter 14, Compiled Statutes,
   1893.   They caused said plat to be filed in the office of the re-
   corder of deeds of Hall county.   They sold and conveyed parts
   of the land platted, describing the parts so sold as lots and blocks
   in Arnold & Abbott's addition.   The public took possession of and
   used the land designated as streets on said plat.   *Held*, (1) That
   the failure of Arnold & Abbott to comply with said section 105
   in platting said land did not render the plat of the addition
   void; (2) that Arnold & Abbott, by their acts, had estopped
   themselves, their heirs and grantees, from claiming any title to
   said land designated as streets on the plat in said addition; (3)
   that the acts of Arnold & Abbott, in platting said addition
   amounted to a common law dedication to the public of the land
   reserved on said plat for streets.

2. **Deeds**: STATE CONTRACTS: LEGAL TITLE.   Arnold & Abbott
   sold and conveyed by warranty deed lots 3 and 4 in block 18 of
   said addition to one McCarthy, and he conveyed said lots to one
   Pillsbury.   Arnold & Abbott then assigned their state contract
   to one Thomas, and the state of Nebraska conveyed the legal
   title of all said land to him.   Thomas then conveyed the said
   lots 3 and 4 to Abbott.   *Held*, That the legal title of said lots
   acquired by Abbott, by his conveyance from Thomas, passed at
   once by operation of law to, and vested in, Pillsbury, the grantee
   of McCarthy.

3. **Specific Performance.** Pillsbury then filed a bill in equity against Alexander & Marsh, to whom he had contracted to sell and convey the lots, to compel them to comply with their agreement to purchase. They defended the action on the ground that Pillsbury did not have the legal title to the property. *Held,* That the defense was not good; that Pillsbury had the legal title to the property and was entitled to a decree of specific performance against Alexander & Marsh.

4. ——: Estoppel. In an action brought by a vendor against a vendee to compel the latter to specifically perform his contract to purchase real estate, such vendee is estopped from alleging, as a defense to said action, a defect in his vendor's title; which defect was brought to the actual knowledge of the vendee at the time he entered into such contract of purchase, and where the evidence shows that he contracted to purchase such real estate incumbered with the alleged defect.

Appeal from the district court of Hall county. Heard below before Harrison, J.

The opinion contains a statement of the case.

*W. H. Thompson,* for appellants:

The records of Hall county, in order that the plaintiff should recover, must show a true and correct title in fee-simple in the plaintiff. (21 Cent. Law Journal, p. 164, and cases cited; *Cornell v. Andrews,* 15 Cent. Law Journal [N. J.], 8.)

Where there is no agreement as to the kind of title that is to be conveyed, the law presumes and makes it a part of every such contract that the title shall be a marketable title; that is, a title free from flaws or serious defects. It should show a full and perfect right of property and personal possession vested in the vendor, free from the liens, burdens, and charges or incumbrances of others; and should be free from litigation, and the vendee should not be compelled to go into court or otherwise do anything in order to perfect his title. (*Jordon v. Poillon,* 77 N. Y., 518; *Taft v. Kessel,* 16 Wis., 291; *Speakman v. Fore-*

*paugh*, 44 Pa. St., 363; *Jeffries v. Jeffries*, 117 Mass., 184; *Miller v. McAllister*, 59 Ind., 492; *Powell v. Conant*, 33 Mich., 396.)

A court of equity will not compel one who has agreed to purchase land and accept a title so doubtful that it may be exposed to litigation. (*Richmond v. Gray*, 3 Allen [Mass.], 25.)

The grantor must be able to furnish proper title prior to the commencement of suit, and prior to the time the contract was rescinded. (*Richmond v. Gray*, 3 Allen [Mass.], 25; *Lick v. Ray*, 43 Cal., 83; *Page v. Greeley*, 75 Ill., 400; *Noyes v. Johnson*, 139 Mass., 436; *Brown v. Cannon*, 5 Gilm. [Ill.], 182.)

*Hatch & Shangle* and *Abbott & Caldwell, contra.*

RAGAN, C.

On the 9th day of June, 1890, W. H. H. Pillsbury and Alexander & Marsh entered into a written agreement, in and by the terms of which Alexander & Marsh agreed to purchase of Pillsbury lots 3 and 4, in block 18, of Arnold & Abbott's addition to Grand Island. They also agreed to pay, and did pay, Pillsbury on that day $400 in cash, and agreed to pay him on the 9th day of July, 1890, the further sum of $1,000, and assumed the payment of a mortgage of $1,000 already on said real estate. Pillsbury on his part agreed, when Alexander & Marsh had complied with their promises, to convey to them, by good title, the above described real estate. Alexander & Marsh having failed to perform their part of the written agreement, Pillsbury brought this suit in equity in the district court of Hall county, alleging in his petition the making and the terms, as above stated, of the written agreement of June 9, 1890; that he had complied with his part of the agreement; that he was ready and willing to convey to Alexander & Marsh a good title to said premises; that

Alexander & Marsh had failed to perform their part of the agreement to purchase, and prayed for a decree requiring them to complete their purchase, and in default thereof, that their interest in the premises might be sold to satisfy the amount due him on the contract of June 9, 1890, and for certain moneys paid out by him since the execution of said contract to protect his lien on said real estate. To this suit Alexander & Marsh interposed the defense that they were induced to enter into the contract of June 9, 1890, by the false and fraudulent representation of Pillsbury, then and there made, that he had a perfect title to the premises described in said contract, when, as a matter of fact, Pillsbury at that time did not have a good title to said premises and had not since acquired one. The district court rendered a decree in favor of Pillsbury and ordered the interest of Alexander & Marsh in the lots sold to pay the amount found due him on the contract made with Alexander & Marsh, and they bring the case here on appeal.

1. It is as well to say in the beginning that the charge made by the appellants, that they were induced to enter into the contract with Pillsbury by reason of false and fraudulent representations made by him, was not proved on the trial. Indeed, there was no effort made to prove it. The appellants relied in the court below, and rely here, upon the one contention to defeat the claims of Pillsbury, viz., that Pillsbury, at the date of the contract, June 9, 1890, did not have a good and legal title to the premises which he agreed to convey. This contention of the appellants is sought to be established by three alleged defects in Pillsbury's title as follows, viz., that there had not been any legal dedication of the streets to the public in Arnold & Abbott's addition to Grand Island, in that the plat of said addition contained no statement to the effect that the addition had been platted with the free consent and in accordance with the desires of the owners; and such plat was

not acknowledged, and contained no certificate of any kind signed by either Arnold or Abbott.

. The evidence shows that in July, 1870, Abbott & Arnold held a contract from the state of Nebraska for the conveyance to them of the northeast quarter of the southwest quarter of section 16, in township 11 north, and range 9 west of the 6th P. M., this land having been sold to them by the state authorities in pursuance of the provisions of the statute for the sale and leasing of the public school lands of the state. In this month Arnold & Abbott caused this piece of land to be surveyed and platted into lots, blocks, and streets, and designated as "Arnold & Abbott's Addition to Grand Island." · This plat they caused to be filed in the office of the recorder of deeds of Hall county. This plat neither Arnold nor Abbott signed or acknowledged in any manner whatever. The only certificate on the plat is that of the surveyor. The evidence further shows that for about twenty years prior to the bringing of this suit the public had been in the open, exclusive, and notorious possession of the streets designated on said plat; that Arnold & Abbott and others had sold and conveyed parts of said addition described by lots and blocks in the addition.

Now, while the statute, section 105, chapter 14, Compiled Statutes of 1893, requires that every such plat as this shall have thereon the certificate of the owners certifying that the plat has been made with their consent and in accordance with their desires, and shall be given the same as a deed, the failure of Arnold & Abbott to comply with these provisions of the statute did not make the platting of Arnold & Abbott's addition void; and though there has been no statutory dedication to the public by them of the streets marked upon said plat, still their platting this addition, filing the plat in the recorder's office and leaving spaces for streets, and their sale and conveyance of part of the property in this addition described as lots and blocks

of the addition, estop Arnold & Abbott and their heirs, grantees, and assigns from claiming any title whatever to any of the land laid out as streets in said addition; and such acts amounted to a common law dedication of the land, platted as streets, to the public. (*Gregory v. City of Lincoln*, 13 Neb., 352, *Village of Weeping Water v. Reed*, 21 Neb., 261; *Ruddiman v. Taylor*, 55 N. W. Rep. [Mich.], 376.) The failure of Arnold & Abbott to comply with said section 105 in the platting of Arnold & Abbott's addition did not render the title which Pillsbury had to the property in question on the 6th of June invalid or unmarketable, or doubtful.

2. The next contention of counsel for appellants is that in order to enable Pillsbury to maintain this action he must show a true and correct title in fee-simple to the property in question from the public records of Hall county. We think this contention of counsel is too broad; but, assuming, for the purpose of this opinion, that counsel is correct, we proceed to inquire what the public records of Hall county disclosed as to the title of Pillsbury to this property on the 6th of June, 1890.

From the evidence in the record before us it appears that on the 6th day of June, 1870, Arnold & Abbott purchased from the state of Nebraska the forty acres of land now constituting Arnold & Abbott's addition to Grand Island, and that the state issued to them a contract agreeing to convey the land to them, or their assigns, on payment to the state of the purchase price mentioned in said contract; that in the month of July, 1870, as already stated, Arnold & Abbott caused the land which they had purchased from the state to be surveyed and platted as Arnold & Abbott's addition to Grand Island; that on the 17th day of October, 1870, Arnold & Abbott conveyed by an absolute warranty deed the property in controversy in this suit to one Patrick D. McCarthy; that subsequently, on the 9th day of December, 1887, McCarthy, by a war-

ranty deed, conveyed the property in question to Pillsbury; that some time prior to the 24th day of July, 1880, Arnold & Abbott assigned the contract, which they held from the state, to one Claude W. Thomas; that on the 24th day of July, 1880, the state of Nebraska conveyed by deed the forty acres of land constituting Arnold & Abbott's addition to said Thomas; that on the 26th day of July, 1880, Thomas, by deed, conveyed to Abbott, of Arnold & Abbott, the property in controversy. Now section 51, chapter 73, Compiled Statutes, 1893, then and now in force, provides: "When a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, shall accrue to the benefit of the grantee." The deed from Arnold & Abbott to McCarthy was an absolute warranty deed, and purported of course to convey the fee-simple title of the property described therein to McCarthy. Arnold & Abbott at this time did not own the fee-simple title to the lots conveyed to McCarthy, but Thomas, by the deed from the state in July, 1880, acquired the fee-simple title to this property, and by operation of the statute above quoted the fee-simple title to the property acquired by Abbott from Thomas on the 26th of July, 1880, vested at once in Pillsbury, the grantee by warranty deed from McCarthy. Pillsbury, then, on the 6th of June, 1890, at the time he made the contract with Alexander & Marsh, had the fee-simple title to the property in question, and that title was of record in the office of the recorder of deeds of Hall county.

Counsel for appellants say that their clients were entitled to a marketable title, an undoubted title, and a title not likely to be exposed to litigation. All this may be conceded, and the answer is that there has never been a time, since the clients of counsel entered into the contract with Pillsbury, but that Pillsbury could have given such a title. The fact that a loan company, or an abstracter, was not

sufficiently versed in the laws of the state to know that whatever title Abbott acquired to this property, after the execution of the deed by Arnold & Abbott to McCarthy, passed by operation of law to McCarthy, or his grantees, did not make Pillsbury's title defective, unmarketable, or doubtful.

3. Another objection urged by the appellants to Pillsbury's title is that it does not appear whether Arnold or Abbott, either or both of them, were married or single men at the time of their conveyance of the property in question to McCarthy. The answer to this is that, by reason of the conveyances and statutes already quoted, Pillsbury had of record the legal title to this property, even if Arnold & Abbott had both been married men at the date of their conveyance to McCarthy; and another answer is that the undisputed evidence in the record shows that at the time they made such conveyance to McCarthy they were both unmarried.

4. There is, however, another reason why this decree cannot be reversed. As before stated, the first contract between the parties hereto was entered into on the 9th of June, 1890. It appears that soon after that the appellants made application to some eastern loan company for a loan with which to take up the mortgage on the property which the appellants had assumed. This loan company made some objections to the title, and the appellants, in their testimony in this case, say that some time about the 1st of July, 1890, they went to Pillsbury and made to him the objections to the title, which have been litigated in this suit. Afterwards, on the 3d of November, 1890, the parties to this suit, by their solemn agreement in writing, extended the time of the performance of the things to be done by the original contract until June 9, 1891. At this time appellants paid $50, the interest due on the mortgage which they had assumed. They afterwards took possession of the property in controversy and made some slight im-

provements on it. They put it in the hands of real estate agents for sale as their property, and they paid the taxes upon the property. At the time of this modification of the contract the appellants knew of the existence of everything which they now claim made the title, which Pillsbury was to give them, defective, and their defense to Pillsbury's action comes too late.

In *McAusland v. Pundt*, 1 Neb., 211, CROUNSE, J., discussing this principle, at page 252, says: "To my mind all these circumstances are evidence that McAusland well knew the fact that Jones' title was in litigation and that he had bargained and acted with reference to it." The syllabus of the case declares that specific performance of a contract for the sale of real estate would not be decreed to a vendee when he had been guilty of gross negligence in the performance of his stipulations; and that the neglect of the vendee to perform his stipulations would not be excused on the ground that the title was involved in a dispute existing when the contract for the purchase was made.

In *Winne v. Reynolds*, 6 Paige Ch. [N. Y.], 407, it is said: "Where there are trifling incumbrances upon the title which were known to the vendee at the time he contracted to purchase, a specific performance will be decreed without compensation, although by a mistake of the scrivener they were not excepted in the written contract of sale." In that case the chancellor remarked: "There is no doubt, however, from the testimony that the defendant knew of the existence of this covenant in the lease at the time he contracted to purchase the land; and he either expected to take the title subject to the conditions of the patroon's conveyance, or he intended to commit a fraud upon the complainant by insisting upon this technical objection to the title afterwards." (See also *Ten Broeck v. Livingston*, 1 Johns. Ch. [N. Y.], 357.)

.. In the case at bar the appellants knew, when they entered into the contract of November 3, for a modification

of the contract of June, everything that they know now as to the alleged defects in Pillsbury's title, and having made the modification of November, with the knowledge of the condition of Pillsbury's title, and having made the agreement voluntarily and freely, without fraud or deception, they are now estopped from alleging anything as a defect in Pillsbury's title, of which they then had knowledge, as they must be presumed to have made the modification they did with reference to the title as it then stood. But the evidence in the record leaves no doubt in my mind that the only objection which the appellants in July, 1890, urged to Pillsbury's title was the objection that the legal title to the property appeared of record to be in Abbott by reason of the conveyance of it to him by warranty deed from Thomas on the 26th of July, 1880; and that, as Thomas held directly from the state, therefore, on the face of the record, the legal title appeared to be in Abbott. To remedy this defect, or supposed defect, Abbott and wife, on the 28th day of July, 1890, made a quitclaim deed of the property in question to Pillsbury, and this deed was recorded, so that on the 3d of November, 1890, when the contract was modified, the public records of Hall county showed the legal title of this property to be in Pillsbury by a direct chain of conveyance from the state of Nebraska; the title at that time standing of record as follows:

This shows the legal title to the property in question was perfect in Pillsbury. The learned district court was right and the decree appealed from is

AFFIRMED.

HARRISON, J., having presided in the court below, took no part in the decision.