PAINE-FISHBURN GRANITE COMPANY, APPELLANT, V. FRED REYNOLDSON, APPELLEE.

FILED APRIL 26, 1927. No. 24585.

1. Contracts: REFORMATION: BURDEN OF PROOF. In a proceeding to reform a contract on the ground of mutual mistake, the burden of proof is on the party interposing that plea.

2. ———: ———: PREPONDERANCE OF EVIDENCE. A preponderance of evidence sufficient to justify reformation of a written instrument requires proof that is clear, convincing and satisfactory.

3. ———: ———: MISTAKE. A mistake for which a written instrument will be reformed must be mutual.

4. ———: ———: MUTUAL MISTAKE. A mutual mistake is one common to both parties, each laboring under the same misconception.

5. ———: ———: INSUFFICIENCY OF EVIDENCE. In an action on a written instrument, a plea by defendant to reform it on the ground of mutual mistake, the evidence outlined in the opinion *held* insufficient to establish the mutuality essential to reformation.

APPEAL from the district court for Boone county: FREDERICK W. BUTTON, JUDGE. *Reversed, and judgment entered for plaintiff.*

*Brown & Dibble* and *Vail & Flory*, for appellant.

*Albert & Wagner* and *W. J. Donahue, contra.*

Heard before Goss, C. J., Rose, Dean, Day, Good, Thompson and Eberly, JJ.

Rose, J.

This is an action by the Paine-Fishburn Granite Company of Grand Island, plaintiff, to recover from Fred Reynoldson of Albion, defendant, $1,800, the purchase price of a granite monument and three granite markers ordered by defendant in writing April 20, 1921, and subsequently erected on the Reynoldson lots in Albion cemetery. Plaintiff furnished the memorials as ordered, but the purchase price has never been paid. The only defense to the suit is stated in a plea for the reformation of the contract of purchase on the ground that by inadvertence and mutual mistake defendant signed the order for the monument and markers in his individual name, "Fred Reynoldson," instead of "Fred Reynoldson, as administrator of the estate of Charles Reynoldson, deceased." The substance of the defense is that the memorials were purchased and furnished for decedent's estate and not for defendant individually. The issues of fact were raised by defendant's answer and a general denial by plaintiff and were tried to the district court as a suit in equity. From a decree reforming the contract and dismissing the suit, plaintiff appealed.

The appeal presents the cause for trial *de novo,* and a proper solution of the question at issue depends on the evidence. The controversy between the parties does not involve reasonableness of the purchase price or fraud or failure on the part of plaintiff to furnish the memorials exactly as ordered.

In a proceeding to reform a contract on the ground of mutual mistake, the burden of proof is on the party interposing that plea.

A preponderance of evidence sufficient to justify reforma-

tion of a written instrument requires proof that is "clear, convincing and satisfactory."

Where mutual mistake was the ground of equitable relief, one opinion goes so far as to quote with approval the following:

"In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties." *Home Fire Ins. Co. v. Wood*, 50 Neb. 381.

According to the law announced in that case the mistake must be mutual, not limited to one party. Within the meaning of the rules in equity, "A mutual mistake is one which is reciprocal and common to both parties, where each alike labors under the same misconception in respect to the terms of the written instrument, and sometimes of the agreement itself." 23 R. C. L. 328, sec. 20.

In the present record there is convincing testimony that defendant, in contracting for the memorials and in signing the order for them, intended to bind the estate of his deceased brother for payment of the purchase price, instead of himself individually, and that he thought plaintiff had the same understanding of the capacity in which he acted when he subscribed his own name to the order, instead of "Fred Reynoldson, as administrator of the estate of Charles Reynoldson, deceased."

In addition to testimony of the character outlined, however, the burden was on defendant to prove that plaintiff also labored under the same mistake in respect to the capacity in which defendant acted when he signed the order. On the issue of mutuality, affirmative evidence that plaintiff understood defendant acted in a representative capacity alone is far from satisfactory. The order was solicited by A. M. Adams, who induced defendant to look at the monu-

ments in plaintiff's place of business at Grand Island, where
the selection was subsequently made and the contract exe-
cuted.   Though defendant indicated in preliminary con-
versations that he would not buy a monument on his own
account, and that he wanted to pay for it in whole or in
part, if ordered, out of his brother's estate, Adams did not
assume or exercise authority to pass on the financial stand-
ing of a purchaser or to extend credit to any one for the
purchase price, and so stated.   Adams and defendant met
the president and vice-president of plaintiff at Grand Island
April 20, 1921.   Defendant there repeated to those corpo-
rate officers his intention to make the purchase, in whole or
in part, a charge against decedent's estate, and it is fair
to infer that plaintiff indicated a willingness to file its claim
in the county court.   Afterward Adams prepared and de-
fendant signed the order.   At the same time and as part of
the same transaction, defendant signed also in his own
name a paper containing the data for three markers, one
each for his father, mother, and brother Charles, all de-
ceased.   Adams testified he was told by defendant that the
latter wanted the monument for the relatives named.   The
vice-president of plaintiff testified:

"I told Reynoldson at that time that we would file a
claim, and if it was paid out of the estate that was their
affair, but, if it was not, of course we would have to look
to him for it, and we agreed to file the claim and we fixed
up the claim and filed it."

The claim was never submitted to the county court for
allowance and was withdrawn.   There is testimony by the
same witness to the following effect:   Defendant said he
wanted the estate to help him pay for the monument and
the markers.   He was told that, when plaintiff files a claim
against an estate, the lettering on the memorial awaits the
action of the court.   Defendant signed the order personally
and said he would be responsible for it.   It was the duty of
the vice-president to pass on the financial credit involved
in the transaction.   He did not rely on the estate, but took

the order for defendant and promptly procured a financial report showing that the latter's debt-paying reputation was good, that his manner of doing business was prompt, and that his estimated net worth was $100,000. Plaintiff relied on defendant and the financial report. The written instrument was evidence that former negotiations were merged therein and that defendant acted for himself alone. The foregoing is a mere summary of evidence on behalf of plaintiff.

In addition to evidence of the character outlined, there is a fair inference from circumstances that plaintiff understood defendant's assurance of payment to relate to his own debt, and not to a technical guaranty that the purchase price would be paid out of the estate of decedent. There were two acting administrators of decedent's estate, and one of them took no part in the ordering of the monument. It bears in large letters the inscription "Reynoldson" and stands on the family plot in the cemetery, where, with an additional marker, it may in the future be considered a monument for defendant as well as for his brother and parents. The allowance for so large a claim against the estate was questioned in advance by plaintiff, notwithstanding a willingness to file one at the request of defendant. A capable financial manager of a business would naturally hesitate to hazard $1,800 on the court's approval of such a claim under the circumstances disclosed. It seems clear from the oral testimony and from the inference arising from surrounding circumstances that plaintiff did not labor under the same mistake or misconception of defendant in respect to the capacity in which he acted when signing the order for the monument and markers. Mutuality of defendant's mistake, therefore, was not shown by clear, convincing and satisfactory evidence. In this view of the record, defendant failed to establish his plea for a reformation of the instrument in controversy.

The former judgment of affirmance is vacated. The judgment of the district court cannot be permitted to stand.

and is reversed. Rather than prolong the litigation by remanding the cause for a new trial, a judgment in favor of plaintiff will be entered in this court and the cause will be remanded for the purpose of carrying it into effect. The order signed by defendant contains the following provision:

"If this contract is not paid for when the monument is erected in the cemetery it will then bear ten per cent. interest per annum from the date of such delivery until the same is fully paid."

Plaintiff did not plead nor prove the date of delivery. With the record in that condition, interest will be allowed from July 15, 1924, the date on which the petition was filed. For the principal and annual interest from that date at the rate of 10 per cent. on $1,800 until the final decision herein, judgment will be entered.

REVERSED, AND JUDGMENT ENTERED FOR PLAINTIFF.