LEONARD E. SMITH ET AL., APPELLANTS, V. MARION HORNKOHL, APPELLEE.

90 N. W. 2d 347

Filed May 31, 1958. No. 34362.

*Halcomb, O'Brien, Knapp & Everson,* for appellants.

*Heaton & Heaton,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Lincoln County. It involves an action for specific performance of a real estate contract brought by Leonard E. and Eva Smith, husband and wife, against Marion Hornkohl and involves a half section of land located in Kimball County, Nebraska. Hornkohl answered and therein asked that plaintiffs be required to pay the balance of the purchase price. Trial was had and the court found generally for the defendant, granting him the relief for which he had prayed. Their motion for new trial having been overruled the plaintiffs brought the matter here from the trial court's ruling thereon.

The action was properly brought in Lincoln County. See § 25-403, R. R. S. 1943.

The principal question raised by the appeal is, are appellants, under the circumstances as disclosed by the

record, entitled to an abatement of a part of the purchase price in view of the fact that appellee sold them the land in fee simple when, in fact, he did not own the mineral estate therein? When referring to the appellants herein individually we shall refer to them as Mr. or Mrs. Smith.

As we said in State v. Alter, 80 Neb. 405, 114 N. W. 293: "There is no expression known to the law that is more unequivocal or completely free from any sort or kind of ambiguity or doubt than the phrase 'fee simple.' It means an absolute title or estate in lands wholly unqualified by any reversion, reservation, condition, or limitation or possibility of any such thing, present or future, or precedent or subsequent, * * *." See, also, Watson v. Dalton, on rehearing, 146 Neb. 86, 20 N. W. 2d 610.

The "Agreement for Warranty Deed" entered into by the parties provides, insofar as here material, as follows:

"ARTICLES OF AGREEMENT made this 16th day of March, 1956, between Marion Hornkohl, a single man of Route #1, North Platte Nebraska, party of the first part, and Leonard E Smith & Eva Smith, Husband & Wife, as Tenents by the entirety with rights of Survivorship to each other, party of the second part.

"WITNESSETH, That the said party of the first part hereby covenants and agrees that if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on Their part to be made and performed, the said party of the first part agrees to furnish to second party a good and sufficient abstract of title showing a good title of record to the premises hereinafter described in the party of the first part, and *will convey and assure to the party of the second part, in fee simple,* clear of all encumbrance whatsoever, *by good and sufficient Warranty Deed,* the following lot, piece and parcel of ground, viz: The North Half of the South Half and the South half of the North

Half of Section 28, Township 15 North, Range 57, West of the Sixth P M, in Kimball County Nebraska, together with all crops now growing on this land. *Possession will be given to Second party immediately on signing this contract.* This tract contains 320 acres, more or less according to the Government Survey thereof. The price is $32.50 an acre.

"And the said party of the second part hereby covenants and agrees to pay to said party of the first part the sum of Ten Thousand Four Hundred - - - DOLLARS in the manner following: One Hundred - - - Dollars, cash in hand paid, the receipt of which is hereby acknowledged, and the balance of $10,300.00 to be paid as Follows; The sum of $3300.00 will be paid as soon as second party has had an opportunity of having the Abstract of Title examined and approved, but not later than April First 1956; The balance of $7000.00 to be paid in five equal annual installments of $1400.00 each with interest at 5% from April First 1956, interest on all of the unpaid balance to be paid annually on April first with the principal payment, first principal payment will be due on April first 1957. All or any amount of the unpaid balance will be accepted by first party on the first of any month with interest at 5% to date of payment." (Emphasis ours.)

"Where an allegation in the petition is admitted by the answer, the fact is established for the purpose of the case, and the court cannot disregard it." Fidelity Finance Co. v. Westfall, 127 Neb. 56, 254 N. W. 710.

The appellee's answer admits paragraph No. 3 of the petition of appellants which alleges: "That immediately after March 16, 1956 the plaintiffs and their agents took possession of the real estate described above and caused agricultural and conservation work to be performed thereon." This was in accordance with the provisions of the parties' contract. Appellants were still in possession thereof when this action was filed on August 2, 1956, and at the time of trial on September 6; 1957. Ap-

pellants paid, and appellee accepted $3,400 of the purchase price. It is the balance of $7,000, with interest, which the court ordered appellants to pay and for which they were ordered to accept a warranty deed from appellee containing the following provisions: "It is understood by the parties that no mineral interests are conveyed by this instrument."

"The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has done or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms." 4 Pomeroy's Equity Jurisprudence (5th Ed.), § 1407, p. 1050. See, also, Freeman v. Elder, 158 Neb. 364, 63 N. W. 2d 327.

Appellants had met these requirements. Both parties asked for specific performance by the form of relief prayed for and, in fact, the trial court granted appellee such relief.

In addition to praying for specific performance of the contract, as entered into by the parties, the appellants prayed: "That if the defendant be unable to convey all of the property contracted to be conveyed that the plaintiffs have and recover judgment against the defendant requiring him to convey so much of the property described by the aforementioned contract as he may own and that the purchase price set forth in the contract be abated to the extent of the fair and reasonable value of the mineral estate with reference to the land described in the aforementioned contract."

It is apparent that the trial judge was not aware of our holding in Freeman v. Elder, *supra,* for in his order overruling appellants' motion for new trial is the following statement: "The court being fully advised in

the premises finds that the rule in Nebraska is such that a purchaser of real estate by contract is not entitled to specific performance of such contract and at the same time to secure an abatement of a portion of the purchase price on account of difficulties or deficiencies in the title or quantity of property contracted for as a matter of law, and for that reason the plaintiffs are not entitled to prevail in the above identified action against the defendant insofar as they request an abatement of any portion of the purchase price."

We said in Freeman v. Elder, *supra*, that "Plaintiff brought this action against defendants seeking specific performance of the contract with abatement of the purchase price because, upon conveyance of the land to defendants, their grantor, the Federal Land Bank, had reserved to itself 'one half of minerals, oil and fissionable material until the year 1964' " and therein held: "Where the vendor is unable to convey the property which he has agreed to convey because of a defect in the quality or quantity of the estate which he possesses and the vendee has entered into the contract without knowledge or notice of the deficiency or defect in the vendor's title, he may ordinarily have specific performance of the contract as to whatever interest the vendor has with such abatement of the purchase price as shall be proportionate to the diminution in value of the subject matter, to be determined by the court from competent evidence adduced with relation thereto."

This is an equity action and therefore here on appeal for review de novo. See § 25-1925, R. R. S. 1943.

The evidence adduced at the trial shows that George N. Phillips, in association with his son Donald Phillips, operated a real estate and insurance business in Pine Bluffs, Wyoming, known as George N. Phillips & Son. Pine Bluffs is one-half mile across the state line in Wyoming and immediately to the west of Kimball County, Nebraska. The appellee orally listed his land in Kimball County for sale with George N. Phillips & Son. George

N. Phillips had been in this business for about 12 years. He was licensed to and did sell real estate in Nebraska, particularly in Kimball County. The firm advertised appellee's land for sale in several newspapers and although George N. Phillips admittedly knew appellee had no mineral estate therein he made no mention of that fact in the ads.

Mr. Smith of Cheyenne, Wyoming, saw one of these ads and, as a result thereof, called on the firm of George N. Phillips & Son in regard thereto. The negotiations leading up to the purchase of the land by the appellants were all between George N. Phillips and Mr. Smith although the son, Donald Phillips, testified he overheard part thereof and to that extent corroborated his father's testimony.

The father testified he knew that appellee had no mineral estate in the land because the abstract, which he then had in his possession, showed by entry No. 38 thereof that it had been reserved by a Margaret A. Maginnis in 1951 and that he informed Mr. Smith of that fact before he purchased the land, doing so by reading that fact from the abstract several times. In this he is corroborated by his son. On the other hand Mr. Smith says he was never so advised and in fact, when he asked in regard thereto, was given an answer from which the only reasonable inference to be drawn was that appellee did have the mineral estate therein. Ordinarily, under this situation, the following principle would be controlling: While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying. See, McDermott v. Boman, 165 Neb. 429, 86 N. W. 2d 62; Eggert v. Schroeder, 158 Neb. 65, 62 N. W. 2d 266; Sop-

cich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478; Johnson v. Erickson, 110 Neb. 511, 194 N. W. 670.

However, the evidence shows that George N. Phillips was an experienced real estate broker, that he filled in the typewritten part of the contract, and that he failed to include therein any mention of the fact that appellee did not own and was not selling to appellants the mineral rights therein. In view of that fact we come to the conclusion that although George N. Phillips may have known of the fact that appellee did not own the mineral estate in the land that he was selling to Mr. Smith such fact was never made known to Mr. Smith and appellants were without knowledge of that fact when they signed the contract on March 16, 1956, in Pine Bluffs, Wyoming.

In Freeman v. Elder, *supra,* we went on to hold that: "On the other hand, specific performance with abatement will not be enforced where it would be productive of inequity or would have the effect of making a new contract between the parties, or it is patent that the nature of the subject matter, the terms of the contract, or the kind and extent of the defect are such that they furnish no basis upon which to ascertain the amount of the compensation or abatement with any degree of certainty, and the fixing thereof would therefore be a mere matter of speculation."

The appellee's answer admits paragraph No. 11 of the petition of appellants wherein they allege: "That the real estate heretofore described and which the defendant contracted to sell and the plaintiffs contracted to purchase is located in an oil and gas producing area of the State of Nebraska that the mineral estate in said land is valuable and that the mineral estate in said land constitutes an essential element of the total valuation of all land in Kimball County, Nebraska and the land heretofore described and the value of the mineral estate therein is ascertainable with a reasonable degree of certainty."

In view of the above admission we think appellants are entitled to an abatement of the purchase price to

the extent of the value of the mineral estate unless, for reasons contended by appellee, he is entitled to a reformation of the contract or appellants are estopped from claiming the right thereto. See Freeman v. Elder, *supra*.

"Equity may reform a contract for the purchase of land so as to include terms upon which the parties definitely agreed and may also require specific performance of the contract as reformed." Smoke v. Pope, 119 Neb. 432, 229 N. W. 330.

"In equity, the reformation of an instrument has the effect of making it express the real intent of the parties. The rights of the parties are measured by the instrument as originally intended, and the effect of the reformation, as a whole, should be to give all the parties all the rights to which they are equitably entitled under the instrument which they intended to execute." Beckius v. Hahn, 114 Neb. 371, 207 N. W. 515, 44 A. L. R. 73. See, also, Kear v. Hausmann, 152 Neb. 512, 41 N. W. 2d 850; 45 Am. Jur., Reformation of Instruments, § 45, p. 609. As stated in 76 C. J. S., Reformation of Instruments, § 4, p. 329: "Reformation is predicated on the equitable maxim that equity treats as done that which ought to be done. It presupposes that the instrument does not express the true intent of the parties, and contemplates a continuance of the contractual relations on what both parties really intended should be the stipulation. It proceeds on the theory that a valid contract was created by the negotiations of the parties, but by mistake is wanting in formal expression or execution so as to evince the actual intent of the parties. The purpose of reformation is to make an erroneous instrument express correctly the intention of, or the real agreement between, the parties, or, in other words, its purpose is not to make a new contract or instrument, but to give effect to the original intent of both parties."

In Paine-Fishburn Granite Co. v. Reynoldson, 115 Neb. 520, 213 N. W. 750, we held:

"In a proceeding to reform a contract on the ground

of mutual mistake, the burden of proof is on the party interposing that plea.

"A preponderance of evidence sufficient to justify reformation of a written instrument requires proof that is clear, convincing and satisfactory.

"A mistake for which a written instrument will be reformed must be mutual.

"A mutual mistake is one common to both parties, each laboring under the same misconception."

In view of what we have already said about the evidence adduced any reformation of the contract, so as to exclude the mineral rights from the estate therein sold to appellants and by appellee agreed to be conveyed to them by warranty deed would not be according to the terms which the parties thereto definitely agreed upon. Consequently reformation cannot be granted.

But even assuming the appellants knew, at the time they entered into the contract, that appellee did not then own the mineral estate that fact would not help appellee unless appellants had thereupon agreed to buy only the interest then owned by appellee, for as stated in Crahane v. Swan, — Or. —, 318 P. 2d 942:

"The appellant cites Wetherby v. Griswold, 75 Or. 468, 147 P. 388, 390, relying on the rule found at page 475 as quoted from 37 Cyc. 742 and reading:

" 'If the purchaser at the time of entering into the contract was aware of the defect in the vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price.'

"The foregoing rule is, however, subject to an exception: When the written contract between the parties provides that the vendor shall convey the premises free from encumbrances, it is immaterial that the purchaser had notice at the time of the contract that there was an encumbrance on the property. The purchaser has a right to insist upon the terms of his contract." As stated in Pillsbury v. Alexander, 40 Neb. 242, 58 N. W. 859:

"In an action brought by a vendor against a vendee to compel the latter to specifically perform his contract to purchase real estate, such vendee is estopped from alleging, as a defense to said action, a defect in his vendor's title; which defect was brought to the actual knowledge of the vendee at the time he entered into such contract of purchase, and where the evidence shows that he contracted to purchase such real estate incumbered with the alleged defect." As quoted from 55 Am. Jur., Vendor and Purchaser, § 154, p. 625, in Sofio v. Glissmann, 156 Neb. 610, 57 N. W. 2d 176: " 'Also, it has been held that where the vendee has knowledge of a lease of the premises which were in possession of the lessee, he is chargeable with notice of the conditions and options in the lease, and he cannot, because of these matters, refuse to take title. If the vendee enters into a contract with knowledge of a defect in the title, and he agrees not to object to the title upon this ground, he cannot rely upon his defect as an excuse for not performing the contract.' " As we have already said, we do not find that appellants contracted to purchase the real estate herein involved with a deficiency in the fee title of the mineral estate. In fact, the exact opposite is true.

Nor do we find the fact that appellants took possession of the land immediately after March 16, 1956, as they had a contractual right to do, and have held it ever since estop them from now claiming the right of abatement.

The evidence shows that appellants received the abstract to the property shortly after appellee signed the contract at North Platte, which was on March 17, 1956. Exactly when they received it is not shown by the evidence. As stated in Schlake v. Healey, 108 Neb. 35, 187 N. W. 427: "Appellant received the abstracts about the 20th day of February and was charged with knowledge of the condition of the record title disclosed by them, * * *." Thus appellants were charged with knowledge of the deficiency shortly after March 17, 1956, since the

abstract was certified on that date and apparently delivered to one of the appellants shortly thereafter.

It should be remembered that appellants are not denying appellee's title but merely claiming a deficiency therein of the mineral estate. If appellee could have supplied that deficiency at any time prior to trial then appellants would not have been in a position to complain thereof and say time was of the essence for, as stated in Schlake v. Healey, *supra*: "* * * since appellant had taken and retained possession of the real estate under the contract, he lost his right to have the title tested in the light of the record as disclosed by the abstract on April 1. Under the circumstances, appellant brought himself within the rule announced in Seaver v. Hall, 50 Neb. 878, and the rights of the parties are to be determined by the state of the title, not as the abstract showed it to be on April 1, but as it was, and as the court found it to be, at the time of the trial." See, also, Seaver v. Hall, 50 Neb. 878, 70 N. W. 373. As part of the same principle the vendee in possession is not estopped to claim such deficiency for to do so would destroy the principle of abatement in case of a defect in the quantity or quality of the estate bargained for. See Freeman v. Elder, *supra*. As therein stated by quoting from 49 Am. Jur., Specific Performance, § 105, p. 123: "'* * * The vendee, in other words, may waive full performance and accept such title as the vendor is able to give, and if he chooses to do so, he has a right to that and to an abatement, and the court will not hear the objection, by the vendor, that the purchaser cannot have the whole.' "

Appellants complain of the trial court's undue restriction in their cross-examination of George N. Phillips. In Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549, we said: " ' "Generally, on cross-examination of a witness, any fact may be elicited which tends to show bias or partiality, and if the witness denies the fact showing the bias or interest, the cross-examining party may call other witnesses to contradict the witness."

Cabel v. State, 18 Ala. App. 557. * * * And it is further held that considerable latitude should be allowed in eliciting from a witness, or in attempting to elicit and to establish, bias, hostility, corruption, or interest of the witness bearing upon his credibility. Glass v. State, 147 Ala. 50.' (Vassar v. Chicago, B. & Q. R. R. Co., 121 Neb. 140, 236 N. W. 189, 74 A. L. R. 1154.)" We find this complaint has merit but in view of our holding herein such error becomes immaterial.

In Freeman v. Elder, *supra,* we said: "* * * whether or not there was any basis upon which to ascertain the amount of the compensation or abatement with any reasonable degree of certainty is a question of fact dependent upon the character or quality of evidence which may be adduced by plaintiff with relation thereto upon the merits * * *." Here admittedly the mineral estate is valuable, constitutes an essential element of the land's valuation, and its value is ascertainable with a reasonable degree of certainty. However, we think the character and quality of the evidence adduced to show its value, particularly as presented by appellee, is insufficient for that purpose. In order to prevent a possible injustice we reverse the judgment and remand the cause to the district court solely for the purpose of permitting both sides to introduce additional evidence as to the value of the mineral estate with directions that the trial court determine the value thereof and deduct it from the balance of the purchase price owing from appellants to appellee and order specific performance of the contract accordingly. All costs are to be taxed to appellee.

REVERSED AND REMANDED WITH DIRECTIONS.