UNION PACIFIC LAND RESOURCES CORPORATION, A CORPORATION, APPELLANT, V. PARK TOWNE, LTD., A CORPORATION, ET AL., APPELLEES.

321 N.W.2d 440

Filed July 2, 1982. No. 44265.

Gordon M. Ryan of Ryan, Seidler & Langdon, for appellant.

Robert G. Decker, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

BOSLAUGH, J.

The plaintiff, Union Pacific Land Resources Corporation, appeals from the order of the District Court dismissing its petition at the close of the plaintiff's evidence. The action was brought to recover the balance of the purchase price due the plaintiff for an irregular tract of land in Kansas City, Kansas, sold to the defendant Park Towne, Ltd. The plaintiff also sued the defendant Joe A. Pace upon a check signed by Pace and delivered to the plaintiff as a part of the transaction.

The plaintiff and the defendant Park Towne, Ltd., entered into a contract for the sale of the property on November 30, 1972. On December 29, 1972, the plaintiff's representative, Alfred Simonsen, and the defendant Pace and his counsel met in Kansas City, Missouri, to close the sale. Pace was the president of Park Towne, Ltd.

Simonsen delivered to Pace a special warranty deed describing the property, and received in exchange from Pace a check for $389,141.59, the amount of the agreed purchase price in full. The check was signed "Joe A. Pace" and, on its face, appeared to be a personal check of Pace. Plaintiff deposited the check through normal banking channels, but on January 9, 1973, the check was returned to the plaintiff unpaid, with a notation from the bank stating "Insufficient Funds" and "Funds not available for disbursement."

On March 28, 1973, the plaintiff's counsel, Byron Strattan, met with defendant Pace and his counsel again in Kansas City, Missouri, in an effort to collect the amount due the plaintiff. Strattan testified that defendant Pace initially stated there was a problem with the legal description of the property, but after a

40- or 45-minute discussion Pace agreed there " 'is no title problem at this time and there is no description problem and that that problem no longer exists.' " Strattan thereupon again demanded the purchase price. Pace then "raised the subject that we are required to build them a road." The defendants' amended answers allege an oral agreement with the city of Kansas City, Kansas, by the plaintiff to pave a portion of 65th Street abutting adjoining property owned by Park Towne, Ltd. The defendants also allege an oral agreement that Park Towne, Ltd., was required to pay only $350,000 of the purchase price until it was notified that the paving was complete.

Strattan testified no such agreement was entered into at the March 28, 1973, meeting. There was some discussion about paving at that meeting, but the plaintiff's position throughout was that if there was an agreement to pave, it had nothing to do with the sale of the property. Strattan testified Pace said that he did not have enough money to pay the entire purchase price, but that he had $350,000 available at that time. Strattan accepted the $350,000, but told Pace that the remainder of the purchase price must be paid within 4 to 6 weeks. Pace continued to argue that payment of the balance due was contingent upon the 65th Street paving. Strattan again stated that the paving had nothing to do with the sale of the property, and the balance of the purchase price would have to be paid within a reasonable time or the plaintiff would sue.

The record shows the special warranty deed delivered to Pace on December 29, 1972, was recorded on January 12, 1973. A quitclaim deed from Upland Industries Corporation to the plaintiff, covering a small portion of the property conveyed to the defendants by the special warranty deed, was recorded the same day, shortly before the warranty deed. The record further shows that a mortgage from Park

Towne, Ltd., to the Ozark National Life Insurance was recorded on March 21, 1973. Park Towne, Ltd., conveyed the property to Carlsberg Mobile Home Properties by a warranty deed dated October 24, 1972, which was recorded on March 23, 1973.

The record also shows that the plaintiff had leased the property to a farmer for the year 1973, and had received $1,200 rental for that year. However, an engineer employed by the plaintiff, who was engaged in paving 65th Street abutting the adjoining property, testified that from 1973 to 1980 a mobile home park was in operation on the property for a majority of the time. It is undisputed that Park Towne, Ltd., purchased the property for use as a mobile home park.

At the close of the plaintiff's evidence, the trial court dismissed the petition as to both defendants. As to the defendant Park Towne, Ltd., the trial court found "the special warranty deed did not convey or attempt to convey to the defendant, Park Towne, the total of the real estate set forth in [the contract], and that it was necessary for the defendant to secure from the plaintiff . . . the quitclaim deed to part of the real estate covered by Exhibit 5, since the special warranty deed did not cover the entire—the real estate—the total real estate in the transaction." The trial court also found that the contract for sale contained "other terms and conditions . . . other than the delivery of the special warranty deed," and that "plaintiff has failed to prove by a preponderance of competent evidence that the plaintiff has fulfilled, completed and complied with all the terms and conditions of the negotiations and contract between the parties." Finally, the court found that the farm lease on the property prevented the plaintiff from delivering possession of the property on December 29, 1972.

As to the defendant Pace, the trial court found that, by virtue of the coded account numbers on the

check, "The Court knows from the hearings on the two previous hearings [sic] herein referred to that the check was in fact written on the corporate account of Park Towne, Ltd."

In determining whether motions to dismiss, made at the close of the plaintiff's evidence, should be sustained, the evidence must be viewed in the light most favorable to the plaintiff. All conflicts must be resolved in favor of the plaintiff, and the plaintiff is entitled to the benefit of all reasonable inferences that may be deduced from the evidence.

As to the defendant Park Towne, Ltd., the evidence shows the defendant accepted a deed to the property on December 29, 1972, which deed it retained and recorded on January 12, 1973. The evidence further shows the defendant mortgaged the property and conveyed it to a third party on March 23, 1973. The description in the deed to the defendant conformed to the description contained in the contract between the parties and was the description used by the defendant to mortgage and convey the property to third parties.

On December 29, 1972, when the defendant Park Towne, Ltd., accepted the deed to the property from the plaintiff, its president Pace delivered a check in full payment of the purchase price to the plaintiff. This is strong evidence that there were no "side agreements" between the parties in regard to the sale of the property.

In *Hoke v. Welsh,* 162 Neb. 831, 834-35, 77 N.W.2d 659, 661 (1956), we said: " '[u]pon the execution, delivery, and acceptance of an unambiguous deed, such being the final acts of the parties expressing the terms of their agreement with reference to the subject matter, all prior negotiations and agreements are deemed merged therein, in the absence of a preponderance of evidence clear and convincing in character establishing some recognized exception such as fraud or mistake of fact, and the deed will

be held to truly express the intentions of the parties.' " See, also, *Beren Corp. v. Spader,* 198 Neb. 677, 255 N.W.2d 247 (1977); *City of Papillion v. Schram,* 204 Neb. 110, 281 N.W.2d 528 (1979). The law is the same in both Kansas, the site of the property, and Missouri, the place where the deed was delivered and the check accepted. "[T]he presumption is that all oral understandings and agreements leading up to the execution of a deed are merged in the deed . . . . [A]mbiguity in a conveyance does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper meaning." *Siegel v. Hackler, Administrator,* 181 Kan. 316, 319, 310 P.2d 914, 917 (1957); *Griffith v. Byers Construction Co.,* 212 Kan. 65, 510 P.2d 198 (1973); *S. G. Payne & Company v. Nowak,* 465 S.W.2d 17 (Mo. App. 1971).

Here the plaintiff executed and delivered an unambiguous deed, which the defendants accepted and recorded, giving a check for the full amount in exchange and later mortgaging and conveying the property. Although the trial court relied in part upon the quitclaim deed from Upland Industries as demonstrating that the plaintiff could not convey all of the land described in the deed delivered on December 29, 1972, it should be noted that the quitclaim deed was dated December 15, 1972, nearly 2 weeks before the closing. Simonsen, the plaintiff's representative at the closing, testified that he did not recall any objection made to the deed or the legal description. At the March 28 meeting, the parties agreed that there was no title problem. At this time Park Towne, Ltd., had already recorded the deed and exercised ownership over the property. By the time of the suit, Park Towne, Ltd., was not justified in relying upon any title problem in refusing to pay the remainder of the purchase price. The evidence establishes as a matter of law that the defend-

ants' claims in regard to errors in description were sham defenses.

After delivery and acceptance of the deed, the real estate contract was merged into the deed. " 'It has been held that articles of agreement for the conveyance of land are in their nature executory and the acceptance of a deed in pursuance thereof is to be deemed prima facie an execution of the contract and the agreement thereby becomes void and of no further effect.' " *Webb v. Graham,* 212 Kan. 364, 366, 510 P.2d 1195, 1197 (1973). In *Griffith v. Byers Construction Co., supra* at 69, 510 P.2d at 202 (1973), the Kansas Supreme Court held: "[W]hen express covenants are placed in a deed additional covenants can not be implied from facts or circumstances surrounding the execution and delivery of the deed. . . . [T]he tendency of modern decisions is not to imply covenants which might and ought to have been expressed by the parties if intended." In *S. G. Payne & Company v. Nowak, supra* at 19, the court stated: "[W]hen the deeds were executed and delivered, they were accepted as performance of the executory contract of sale. All prior commitments were merged into the deeds unless, by express contract, certain matters were held open to be completed at a later time." Although the contract here contained certain conditions in addition to delivery of the warranty deed, the deed itself was not made subject to any of those conditions. Furthermore, the evidence does not show the parties "held open" any other matters "by express contract" "to be completed at a later time." The plaintiff's evidence shows delivery and acceptance of the deed, and no further agreements with respect to the real estate. The contract was merged into the deed and the plaintiff was entitled to a finding by the trial court that the contract for sale had been executed by delivery and acceptance of the deed.

The trial court found that the farm lease on the

property prevented the plaintiff from delivering possession on December 27, 1972. The plaintiff's counsel freely admitted that the defendants were entitled to credit for any damages resulting from a delay in obtaining possession. " 'Where the vendor is unable to convey the property which he has agreed to convey because of a defect in the quality or quantity of the estate which he possesses and the vendee has entered into the contract without knowledge or notice of the deficiency or defect in the vendor's title, he may ordinarily have specific performance of the contract as to whatever interest the vendor has with such abatement of the purchase price as shall be proportionate to the diminution in value of the subject matter, to be determined by the court from competent evidence adduced . . . .' " *Smith v. Hornkohl,* 166 Neb. 702, 708, 90 N.W.2d 347, 352 (1958). In *Hoke v. Welsh,* 162 Neb. 831, 837, 77 N.W.2d 659, 663 (1956), the court noted: "The defendants, upon discovery of the shortage in the land conveyed, sought to rescind and tendered back the purchase price. The remedy ordinarily is to grant the purchaser an abatement of the purchase price in case of a deficiency in quantity." *Accord, Ray v. Wooster,* 270 S.W.2d 743 (Mo. 1954).

In the present case, Park Towne, Ltd., did not seek to rescind or tender back the deed, but simply refused to pay the $39,141.59 balance of the purchase price. There was no evidence from which the trial court could have found that the defendants were entitled to abatement of the purchase price in that particular amount. By granting the defendants' motions, the trial court in effect awarded an abatement in that amount.

There is no support in the record for the trial court's finding that the presence of Park Towne's coded account number on the check for $389,141.59, signed "Joe A. Pace," established that the defendant Pace was not personally liable on the check. In

the remarks which accompanied the court's announcement of its decision, the court stated: "The Court is required to take judicial notice of commercial practices. It is not uncommon practice on transactions such as this for an account to be opened and for checks to be used that are not the formal printed checks of a corporation. The Court knows from the hearings on the two previous hearings [sic] herein referred to that the check was in fact written on the corporate account of Park Towne, Ltd."

The plaintiff was entitled to have all the allegations of its petition which were supported by the evidence taken as proved. In the present state of the record, the plaintiff was entitled to a finding that the check was the personal obligation of Pace. See Neb. U.C.C. §§ 3-413(2), 3-802(1)(b), 3-403(2) (Reissue 1980). There is nothing in the record to support a finding that the magnetically coded numbers on the check identified it as drawn on the defendant Park Towne's account.

The rulings on the motions of the defendants were erroneous. The judgment of the District Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.